UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------

| | |
|---|---|
| In re: | Chapter 11 |
| 1234 Pacific Management LLC, | Case No.  1:19-40026-nhl |
| Debtor. | Hon. Nancy Hershey Lord |

------------------------------------------------------------

# 1234 PACIFIC STREET LENDER LLC'S PLAN OF LIQUIDATION FOR 1234 PACIFIC MANAGEMENT LLC

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, NY 10017
(212) 661-2900
Jerold C. Feuerstein, Esq.
Stuart L. Kossar, Esq.

*Attorneys for 1234 Pacific Street Lender LLC*

Dated:   New York, New York
         July 8, 2019

1234 Pacific Street Lender LLC (**"Secured Creditor"** or **"Plan Proponent"**), a secured creditor of 1234 Pacific Management LLC (the "**Debtor**"), hereby proposes the following Plan of Liquidation (the "**Plan**") for the Debtor's Chapter 11 case pursuant to §§ 1121, 1122 and 1123 of Title 11 of the United States Code.

## ARTICLE I

## DEFINITIONS

Unless the context otherwise requires (i) the terms set forth in this Article 1 shall have the following meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan without reference to a particular document are to the respective section of, article of, or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as otherwise stated in the Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth in § 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and

effective on the Petition Date, except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

1.1.    **"Administrative Bar Date"** means the first Business Day that is at least 30 days after the Effective Date.

1.2.    **"Administrative Claim"** means a Claim for, or request for payment of, an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by a Final Order to the extent such objection has been resolved in favor of the holder of such Claim, and (iii) which is not an Insured Claim.

1.3.    **"Administrative Expense"** means any cost or expense of administration of this Case, other than Bankruptcy Fees, allowable under §§ 503(b), 330 or 331 of the Bankruptcy Code.

1.4.    **"Allowed Claim(s)"** means a Claim against the Debtor that (a) has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i) with respect to which a Proof of Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent.

1.5.    **"Allowed Interest"** means an Interest in the Debtor that has not been disallowed and is not a Disputed Interest with respect to which (i) a Proof of Interest has been timely filed or, (ii) if no Proof of Interest has been timely filed, that has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent.

1.6.    **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time and effective as to cases filed on the Petition Date.

3

1.7.    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of New York, or the United States District Court for the Eastern District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to § 157(d) of title 28 of the United States Code.

1.8.    **"Bankruptcy Fees"** mean all fees and charges assessed against the Estate under § 1930 of title 28 of the United States Code.

1.9.    **"Bankruptcy Rules"** mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York, in either case, as now in effect or hereinafter amended.

1.10.    **"Bar Date"** means July 2, 2019, the date fixed by Order of the Bankruptcy Court entered on April 15, 2019 [ECF No. 32], subsequent to which date a Proof of Claim may not be timely filed.

1.11.    **"Business Day"** means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.12.    **"Case"** means this case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date and styled: In Re: 1234 Pacific Street Management LLC, Case No. 1:19-40026-nhl.

1.13.    **"Cash"** means lawful currency of the United States of America.

1.14.    "**Claim**" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an

equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.15.    **"Class"** means a category of substantially similar Allowed Claims or Allowed Interests.

1.16.    **"Closing Date"** means the date of the closing of the sale of the Property.

1.17.    **"Committee"** means any Committee appointed in this case pursuant to § 1102 of the Bankruptcy Code.

1.18.    **"Confirmation"** means the entry of the Confirmation Order.

1.19.    **"Confirmation Date"** means the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that (i) the Confirmation Order becomes a Final Order and (ii) the Confirmation Order is not stayed by an Order of a court of competent jurisdiction.

1.20.    **"Confirmation Order"** means an Order confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

1.21.    **"Creditor"** means a holder of an Allowed Claim.

1.22.    **"Cure Amount"** means any amount required, pursuant to §§ 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to an executory contract or unexpired lease for any actual pecuniary loss resulting from a default in respect of an executory contract or unexpired lease.

1.23.    **"Debtor"** means 1234 Pacific Management LLC.

1.24.    **"Disbursing Agent"** means Secured Creditor's counsel, Kriss & Feuerstein LLP.

1.25.    **"Disclosure Statement"** means the Disclosure Statement for Secured Creditor's Plan of Liquidation for 1234 Pacific Management LLC, including all exhibits, attachments or amendments thereto, approved by Order of the Bankruptcy Court.

1.26.    **"Disputed Claim"** means (a) any claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; (b) any Claim that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order; provided however, that until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim shall be deemed to be a Disputed Claim in its entirety if; (A) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (B) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (C) no corresponding Claim has been listed in the Schedules.

1.27.    **"Disputed Claim Reserve"** means the segregated account or accounts established by the Disbursing Agent pursuant to Section 7.7 of the Plan.  All references to a banking institution and/or a domestic bank, for the purposes of (i) addressing a Disputed Claims Reserve, (ii) a domestic bank, refer only to a banking institution that is an authorized depository in the Eastern District of New York.  In addition to the foregoing, the Disbursing Agent shall be entitled to open and maintain an Interest on Lawyers Account (IOLA) with Kriss and Feuerstein LLP.

1.28.    **"Effective Date"** means the Closing Date of the sale of the Property or such earlier date as may be designated by the Disbursing Agent after any objection to the Secured Creditor's Secured Claim has been resolved.

1.29.    **"Estate"** means the estate created on the Petition Date pursuant to § 541 of the Bankruptcy Code.

1.30.   **"Final Order"** means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed or that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.31.   "**Governmental Unit**" means the United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

1.32.   **"Insider"** means an insider of the Debtor as determined in accordance with § 101(31) of the Bankruptcy Code.

1.33.   **"Insider Claim"** means an Allowed Claim held by or behalf of an Insider or any successor in interest or assignee thereof.

1.34.   **"Interest"** means an equity interest holder in the Debtor.

1.35.   **"Interest Holder"** means the holder of an Allowed Equity Interest in the Debtor.

1.36.   **"Legal Holiday"** means a Legal Holiday as that term is defined in Bankruptcy Rule 9006(a).

1.37.   **"Lien"** means lien as defined in § 101(37) of the Bankruptcy Code.

1.38.   "**Mortgage**" means that certain *First Mortgage, Consolidation, Extension, Modification and Security Agreement* encumbering the Property, which was given by the Debtor to Signature Bank on June 2, 2014, and recorded in the Office of the City Register, of the City of

New York, County of Kings on June 12, 2014 as CRFN 2014000201863.  The Mortgage, and all of Signature Bank's right, title and interest thereunder was assigned to the Secured Creditor by way of that certain *Assignment of Mortgage* dated as of January 15, 2019, which was also recorded Office of the City Register, of the City of New York, County of Kings on February 21, 2019 as CRFN 2019000059240.

1.39.   **"Note"** means collectively, each and every agreement, promissory note, including any amendment or modification thereof, or allonge thereto and/or any assignment evidencing a Secured Claim against the Debtor as assigned and now held by Secured Creditor, but originally held by Signature Bank in the original principal amount of $4,000,000.00, which includes that certain Restated Note dated June 2, 2014.

1.40.   **"Order"** means an order of the Bankruptcy Court.

1.41.   **"Petition Date"** means January 3, 2019, the date on which the Debtor commenced its Case by the filing of its voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

1.42.   **"Plan"** means this Secured Creditor's Plan of Liquidation for 1234 Pacific Management LLC., as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.43.   "**Plan Proponent"** means the Secured Creditor.

1.44.   **"Post-Petition Interest"** means the applicable amount of post-petition interest to be paid on account of holders of Allowed Claims (other than those of insiders of the Debtor and/or equity) which are entitled to interest by the nature of such claims, and interest in the amount of 4%.  For the avoidance of doubt, the Disbursing Agent need not post a bond.

1.45.    **"Post-Petition Tax Claim"** means an Allowed Claim of a Governmental Unit for taxes (or for interest or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

1.46.    **"Priority Claim"** means that portion of a claim other than a Priority Tax Claim, an Administrative Claim, a Secured Claim or Bankruptcy Fees, to the extent entitled to priority under § 507 of the Bankruptcy Code.

1.47.    **"Proof of Interest"** means a proof of Claim filed pursuant to § 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.48.    **"Priority Tax Claim"** means an Allowed Claim of a Governmental Unit of the kind specified in § 507(a)(8) of the Bankruptcy Code.

1.49.    **"Professional"** means all professionals employed by the Debtor under § 327 of the Bankruptcy Code.

1.50.    **"Professionals Fees"** means compensation for services rendered, and reimbursement of expenses incurred by Professionals as awarded by Final Order following application in accordance with §§ 330 and 331 of the Bankruptcy Code.

1.51.    **"Proof of Administrative Claim"** means a request for payment of an Administrative Expense (including fees and expenses allowed under §§ 330 or 331 of the Bankruptcy Code of duly retained professionals providing services in this Case) filed pursuant to § 503 of the Bankruptcy Code.

1.52.    **"Proof of Claim"** means a proof of Claim filed pursuant to § 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.53.    **"Proof of Interest"** means a proof of Interest filed pursuant to § 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.54.    **"Property"** means the real Property of the Debtor and the improvements thereon, located at and commonly known as 1232-1234 Pacific Street, Brooklyn, New York 11216 (Block 1206, Lot 32).

1.55.    **"Reorganized Debtor"** means the Debtor after the Effective Date.

1.56.    **"Sale Proceeds"** means the proceeds received on account of the sale of the Property, as approved by the Bankruptcy Court, which sale shall be in accordance with § 363 of the Bankruptcy Code at public auction and which sale shall be free and clear of all liens, claims and encumbrances, with any liens attaching to the proceeds.

1.57.    **"Schedules"** mean the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court in accordance with § 521(l) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.58.    **"Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to § 506(b) of the Bankruptcy Code, to the extent that it is secured by a lien on property in which the Estate has an interest or that is subject to set-off under § 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to set-off, as applicable, as determined pursuant to § 506(a) of the Bankruptcy Code.

1.59.    **"Secured Creditor"** means 1234 Pacific Street Lender LLC, the holder of a Class 2 Claim.

1.60.    **"Secured Creditor's Secured Claim"** means the Secured Claim against the Debtor or Property of the Debtor or its estate held by the Secured Creditor on account of the Note,

and receiving treatment as an Allowed Claim, including post-petition accruals, fees, costs, and other charges without adjustment (other than as may be amended in writing by the Secured Creditor).

1.61.   **"Subordinate Claims"** means claims of all creditors holding allowed

1.62.   **"Secured Tax Claim"** means a Secured Claim for taxes or assessments held by a Governmental Unit, to the extent, if any, that such taxes and assessments are entitled to a security interest under applicable non-bankruptcy law.

1.63.   **"Substantial Consummation"** means a conveyance or transfer of all or substantially all of the Property proposed by the Plan to be transferred as evidenced by a new deed as that term is defined at § 1101(2)(A) of the Bankruptcy Code.

1.64.   **"Transfer Taxes"** means, without limitation, (i) New York County or other applicable local Real Property Transfer Taxes, (ii) New York State mortgage recording taxes imposed under Article 11 of the New York State Tax Law, and (iii) and any and all other stamp taxes or similar taxes, which, but for the applicability of § 1146(c) of the Bankruptcy Code would be applicable, to any transfer made in accordance with, pursuant to, or in furtherance of the Plan.

1.65.   **"Unsecured Claim"** means an Allowed Claim, including a deficiency claim, which is not an Administrative Claim, a Bankruptcy Fee, an Insider Claim, an Insured Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim or a Secured Tax Claim.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

2.1   Pursuant to § 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Allowed Priority Tax Claims.  Such Claims, to the extent they are

Allowed Claims, shall receive the treatment provided in this Article 2 in full satisfaction, release and discharge thereof.

2.2    **Administrative Bar Date.**  Except as otherwise provided in Section 2.3 of the Plan, requests for payment of and/or Proofs of Administrative Claims must be filed no later than the Administrative Bar Date.  The Administrative Bar Date is the date that is the first business day that is ten (10) days after Confirmation.  Holders of Administrative Claims that do not file Proofs of Administrative Claims on or before the Administrative Bar Date, shall be forever barred from asserting such Claims against the Debtor or its Property; provided, however, that Holders of Claims for Administrative Expenses arising in the ordinary course of the Debtor's business need not file Administrative Claims.

2.3    **Professionals' Compensation and Reimbursement.**  All Professionals (other than the Plan Proponent's counsel who will be acting as disbursing agent), shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to § 330 of the Bankruptcy Code no later than the Administrative Bar Date. Any such application timely filed shall be deemed to be a Proof of Administrative Claim.  No later than three days prior to the Effective Date, each such Professional shall provide the Disbursing Agent with an estimate of the total amount of compensation and expenses for which such Professional expects to seek final compensation pursuant to § 330 of the Bankruptcy Code.  Such estimates shall include estimated sums for the preparation and prosecution of any such application. Unless otherwise agreed by such claim holder in writing, on the Effective Date the Disbursing Agent shall segregate sufficient cash to pay all such estimated compensation and expenses in full. Objections to any Professional's application for compensation or reimbursement must be filed and served upon such Professional, and the Disbursing Agent, no later than 90 days after the Effective

Date.  Any such objection not timely filed and served shall be deemed to have been waived. Objections to any and all fee applications, must be served upon the Office of the United States Trustee, Attn: Nazar Khodorovsky, Esq., 201 Varick Street, Ste 1006, New York, New York 10014-9449, and objections to fee applications must be served not later than three (3) days prior to the hearing on the relevant fee application.

2.4    **Post-Petition Tax Claims.**  All Proofs of Administrative Claims for Post-Petition Tax Claims for which no bar date has otherwise previously been established, must be filed on or before the later of (i) 10 days following the Confirmation; and (ii) 60 days following the filing of the tax return for such taxes for such tax year or period with the applicable Governmental Unit. Any holder of any Post-Petition Tax Claim that does not file a Proof of Administrative Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Debtor, the Property or Secured Creditor, whether any such Post-Petition Tax Claim is deemed to arise prior to, on, or subsequent to the Effective Date.

2.5    **Administrative Tax Claims Held by Governmental Units.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, all Administrative Tax Claims held by Governmental Units shall be paid, in Cash, in full either (1) on or prior to the Effective Date, or (ii) upon such other terms as may be agreed to, in writing, between the Disbursing Agent, and/or the Debtor and such Governmental Units on or before the Confirmation Date.

2.6    **Administrative Claims.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Administrative Claim or (ii) as may be otherwise mutually agreed in writing

between the Disbursing Agent and the holder of such Claim; provided, however, that any Administrative Claim incurred by the Debtor in their ordinary course of its business shall be paid in full or performed by the Debtor in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

2.7     **Priority Tax Claims.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Priority Tax Claims, and except as may be otherwise mutually agreed in writing between the Debtor and such Governmental Units, all Priority Tax Claims shall be paid by the Disbursing Agent in Cash in full on the Effective Date.

2.8     **Bankruptcy Fees.**  The Disbursing Agent shall pay all outstanding fees and charges assessed against the Debtor under 28 U.S.C. § 1930 and any applicable interest due thereon until conversion, dismissal or closing of this Case by means of a final decree, whichever happens earlier.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

Except as otherwise provided in Article 2, Allowed Claims are classified as set forth in this Article 3.  A Claim is in a particular Class designated herein only to the extent such Claim (i) fits within the description of such Class (and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes) and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

3.1     **Class 1 - Priority Tax Claims.**  Class 1 consists of all Allowed and/or Priority Claims, including a Claim for Debtor's Counsel's legal fees and outstanding taxes owed by the Debtor to New York State Department of Taxation and Finance for unpaid and outstanding income and/or corporate taxes allegedly owed by the Debtor.

3.2    **Class 2 - Secured Claims.** Class 2 consists of the Secured Creditor's Secured Claim in the amount of $7,726,206.00 (estimated as of September 30, 2019).

3.3    **Class 3 – Other Secured Claims.** Class 3 consists of Gloria Malcolm's Allowed Secured Claim against the Property, which as of the Petition Date existed in the amount of $852,118.41, (ii) Orlaine Edwards Allowed Secured Claim with a scheduled claim of $50,000.00 and (iii) water and sewer charges in the sum of $38,182.71 for a total of $940,301.12.

3.4    **Class 4 – General Unsecured Claims.** Class 4 consists of General Unsecured Claims, which have been either been filed in the Court's Claims Register or scheduled in the Debtor's petition and/or schedules and amounts to a total of $88,613.80.

3.5    **Class 5 – General Unsecured Claims.** Class 5 consists of all equity interests in Debtor. Equity Interests shall not receive a distribution under the Plan, unless surplus proceeds exist, if any, after payment to all allowed classified and unclassified claims against the Debtor's Estate. Interests of Equity shall not be extinguished, and the Debtor shall remain responsible for either managing or winding down its own affairs.

## ARTICLE IV

## TREATMENT OF CLAIMS

Allowed Claims in Classes 1, 2, 3, 4, 5 and Equity Interests in Class 6 are not impaired and shall receive the following treatment under the Plan in full settlement, release and discharge thereof.

4.1    **Class 1 – Priority/Admins Claims.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of the Priority Claims, the holders of Priority Claims shall receive the following treatment: on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, each holder of a Priority

Claim shall receive payment from the Disbursing Agent (i) in Cash, in the full amount of its Priority Claim, or (ii) as may be otherwise agreed in writing between the Debtor and the holder of such Claim; from the Sale Proceeds.

4.2    **Class 2 – Secured Creditor Secured Claim.**   On the Effective Date, in full satisfaction, release and discharge of the Secured Creditor Secured Claim (without regard to any deficiency claim that may arise), Secured Creditor, or its nominee shall take title to the Property free and clear of all liens, except that its election ownership shall be subject to the Mortgage.

4.3    **Class 3 – Other Secured Claims.**  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of all Allowed General Unsecured Claims (except deficiency claims), on the Effective Date, each holder of a Class 3 Claim shall receive cash in the full amount of their Claim from the Sale Proceeds.

4.4    **Class 4 – General Unsecured Claims.**   Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of all Allowed General Unsecured Claims (except deficiency claims), on the Effective Date, each holder of an Allowed General Unsecured Claim shall receive cash in the full amount of their Allowed General Unsecured Claim from the Sale Proceeds.

4.5    **Class 5 – Equity Interests**.  On the Effective Date, all Equity Interests shall receive the value of their Interests, which may exist as the remaining balance of Cash from sale proceeds, if any, after payment to all classified and unclassified claims against the Debtor.   Interests of Equity shall not be extinguished, and the Debtor shall remain responsible for either managing or winding down its own affairs.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1     **Rejection of Executory Contracts and Unexpired Leases.**  On the Effective Date, all Executory Contracts and Unexpired Leases to which the Debtor is a party shall be deemed rejected.

5.2     **Rejection Claims.**  Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases of the Debtor pursuant to Section 5.1 of the Plan shall be treated as Unsecured Claims.

5.3     **Bar to Rejection Claims.**  A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to Section 5.1 of the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor within thirty (30) days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Effective Date.  Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor, or their successors or their respective Property.

## ARTICLE VI

## IMPLEMENTATION OF THE PLAN

6.1     **Implementation.**  The Disbursing Agent shall be appointed on the Confirmation Date on behalf of the Debtor.  The Disbursing Agent and Secured Creditor shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.  The

Confirmation Order shall contain appropriate provisions, consistent with § 1142 of the Bankruptcy Code, directing the Disbursing Agent and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property required by the Plan and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan.  Pursuant to § 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax.  Secured Creditor shall have the protections afforded under the "good faith" purchase provisions of § 363(m) of the Bankruptcy Code and all stay provisions under Bankruptcy Rule 6004(h) or elsewhere will be waived.  The Disbursing Agent is designated a party in fact to execute all documents in the name of the Debtor as may be required to consummate the Sale.

6.2     **Sale of Assets**.  In order to fund the distributions under the Plan, the Disbursing Agent shall consummate the closing and sale of the Property to Secured Creditor and such sale shall not be taxed under any law imposing a stamp or similar tax as provided for in §1146(a) of the Bankruptcy Code. Pursuant to § 1123(a)(5)(D) of the Bankruptcy Code, the Debtor's Property shall be sold to Secured Creditor, free and clear of any and all Liens, Claims, Encumbrances, Interests, bills, or charges whatsoever, other than the usual and customary utility easements, if any, appearing as of record or as preserved in this Plan, such sale being subject to higher or better offers.

6.3     **Vesting of Assets**.  (a) Except as otherwise provided in the Plan, on the Effective Date the Property shall vest in Secured Creditor free and clear of all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

18

6.4    **Funding**.  Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent in accordance with the terms of the Plan.  Except as set forth elsewhere in the Plan, all distributions to be made on the Effective Date and from Secured Creditor (approximately $1,089,672.00) as necessary to satisfy all Allowed Claims in full on the Effective Date, shall be transferred to the escrow account of the Disbursing Agent on Confirmation. At Closing, the Secured Creditor shall deliver to the Disbursing Agent, and the Disbursing Agent shall segregate sufficient Cash as outlined herein, to pay or reserve for all payments that are to be made pursuant to the terms of the Plan.

6.5    **Transfer Taxes.**  (a)  Pursuant to § 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan shall be exempt and shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Tax, mortgage recording tax or similar tax, and, to the extent provided by § 1146 of the Bankruptcy Code, if any, shall not be subject to any state, local or federal law imposing sales tax, and (b) Pursuant to § 1142(b) of the Bankruptcy Code, the Confirmation Order shall direct the Register's office to record any recordable document executed in connection with the consummation of the Plan, without the payment of Transfer Taxes.  The Office of the Register of Kings County, and any applicable Register's Office in the State of New York or its municipalities and counties shall record any recordable document executed in connection therewith without the payment of any Transfer Taxes.

6.6    **Execution of Documents.**  (a) On the Effective Date, the Disbursing Agent and any necessary party thereto, shall execute, release, and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.  The Debtor shall not interfere with the Disbursing Agent in the performance of its duties.

(b)       Except as otherwise provided in the Plan, all assets transferred (i) by the Estate or (ii) by any non-debtor third party in accordance with the terms of the Plan shall be, as of the Effective Date, deemed to be free and clear of all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

(c)       Pursuant to §§ 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Disbursing Agent and the Disbursing Agent shall be authorized to execute, in the name of any necessary party, any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including any Lien, claim or encumbrance that is to be released and satisfied upon compliance with the provisions of the Plan) not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

6.7       **Filing of Documents.**  Pursuant to §§ 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

6.8       **Preservation of Rights of Action.**  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor shall retain, and on the Effective Date shall be deemed to have assigned to the Reorganized Debtor or their designee, who may, in accordance with its determination of the best interest of the

estate, enforce any claims, rights and causes of action arising under §§ 510 and 544 through 550 of the Bankruptcy Code or any similar provisions of state law, or any statute or legal theory.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

7.1 **Disbursing Agent.** The Disbursing Agent shall not be deemed to be an officer, fiduciary or agent of the Debtor. Furthermore, the Disbursing Agent shall have the express authority to execute a deed to the Property and other conveyance documents in place, and stead of members of the Debtor, or other authorized parties of the Debtor, and shall have no other powers or authority with respect to the Debtor. The Disbursing Agent shall have no obligation to file tax returns or similar reports with the applicable taxing authorities. The Disbursing Agent shall not have, or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, except in the case of gross negligence, willful misconduct, criminal conduct, or for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out of its duties under the Plan, which liability shall be expressly limited to the period commencing from the Effective Date of the Plan and ending on the date that all disbursements in accordance with the Plan have been distributed.

7.2 **Timing of Distributions Under the Plan.** Subject to Section 7.6 of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on account of any Claim shall be deemed to be timely made if made on or within five (5) Business Days following

the later of (i) the Effective Date or (ii) the expiration of any applicable objection deadline with respect to such Claim or (iii) such other times provided in the Plan.

7.3 **Method of Payment.** Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

7.4 **Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court, any party in interest may object to the allowance of any Claim filed with the Bankruptcy Court in whole or in part by serving and filing an objection to such Claim, but in no event after the earlier to occur of (i) ten (10) days after the Confirmation or (ii) thirty (30) days after the date Proof of such Claim or a request for payment of such claim is filed.

7.5 **Prosecution of Objections.** After the Confirmation Date, only the Disbursing Agent and the Disbursing Agent shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims. The Disbursing Agent and the Disbursing Agent shall have the right to litigate to judgment, settle or withdraw any objection to any Claim.

7.6 **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

7.7 **Escrow of Cash Distributions.** (a) Unless otherwise agreed to in writing by the Disbursing Agent and the holder of any Claim (other than an Unsecured Claim or an Insider Claim) to which this Section 7.7 (a) applies, on the Effective Date the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property to be distributed under the Plan on account of Disputed Claims (other than the Secured Creditor's Claim, an Unsecured Claim or an Insider Claim) that would be Allowed Claims but for the pendency of a dispute with respect thereto, including, but not limited to (i) such Disputed Claims entitled to

treatment as Administrative Expenses or as Priority Claims pursuant to §§ 503 and 507 of the Bankruptcy Code, (ii) Claims of Governmental Units for any tax, (iii) any disputed cure amount and (iv) any amount due but not payable on the Effective Date on account of Administrative Expenses or Claims entitled to priority pursuant to §§ 503 and 507 of the Bankruptcy Code.  The Disbursing Agent shall also segregate any interest, dividends or proceeds of such Cash.  Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

(b)     In determining the amount of the Cash or property to be distributed under the Plan on account of Disputed Claims, the calculation of the distribution to each holder of an Allowed Claim in such class shall be made as if all Disputed Claims in the applicable class were Allowed Claims in their respective face amounts.

(c)     The Disbursing Agent shall have the right to seek an Order of the Bankruptcy Court, after notice and a hearing, estimating or limiting the amount of Cash or property that must be so deposited.  Any Creditor whose Claim is so estimated or limited shall have no recourse to any assets theretofore distributed on account of any Allowed Claim, or any other Entity or property if the Allowed Claim of the Creditor (whose Claim was so estimated or limited) as determined by Final Order exceeds the amount so deposited.  Instead, such Creditor shall have recourse only to the undistributed assets in the Disputed Claims reserve (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims allowed by Final Order.

7.8     **Distribution After Allowance.**  Within thirty (30) days after the allowance of a Disputed Claim, in the event any distributions have been made as of the date such Claim becomes an Allowed Claim, the Disbursing Agent shall distribute from the funds placed in escrow in

accordance with Section 7.7 of this Plan all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

7.9 **Investment of Segregated Cash and Property.** To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim, Disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by § 345 of the Bankruptcy Code; provided, however, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

7.10 **Distribution After Disallowance.** Subject to Section 7.7(c) of the Plan, the Cash and other property segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof remaining after all Disputed Claims have been resolved by Final Order shall be paid to the Allowed Interests.

7.11 **Surrender of Instruments; Execution of Satisfactions and Releases.**

(a) Notwithstanding any other provision of the Plan, no Creditor of an Interest Holder, that holds a note or other instrument evidencing such Creditor's Claim of Interest may receive any distribution with respect to such Claim or Interest unless and until the original note or other original instrument evidencing such Claim or Interest shall have been validly surrendered to the Disbursing Agent at the sole cost and expense of such Creditor of Interest Holder.

(b) Any Cash or property to be distributed pursuant to the Plan on account of any such Claim shall, pending surrender, be treated as an undeliverable distribution pursuant to section 7.13 of the Plan.

(c)      In the event any Creditor of Interest Holder is unable to surrender a Note or other instrument evidencing a Claim against the Debtor that has been destroyed, lost or stolen, such Entity may receive a distribution with respect to such Claim by presenting to the Disbursing Agent, in a form acceptable to the Disbursing Agent:  (i) proof of such Entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Disbursing Agent and all other Entities deemed appropriate by the Disbursing Agent from any loss, action, suit or any claim whatsoever which may be made as a result of such Entity's receipt of a distribution under the Plan.

(d)      All questions as to the validity, form or eligibility of any Note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court. Neither the Debtor nor the Disbursing Agent shall be under any duty to give notification of defects in such tender or shall incur liability for failure to give notification of such defects.

7.12    **Delivery of Distributions.**  Except as provided in Sections 7.12 and 7.13 of the Plan, distributions to holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective Proofs of Claim filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address.

7.13    **Undeliverable Distributions.**  (a)  If the distribution to the holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address.  Undeliverable distributions shall remain in the possession of the Disbursing Agent until

the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to Section 7.14 of the Plan.

(b)      Nothing contained in the Plan shall require Secured Creditor the Debtor or the Disbursing Agent to attempt to locate any holder of an Allowed Claim.

7.14    **Unclaimed Distributions.**  Any Cash or other property to be distributed under the Plan shall be retained by the Disbursing Agent if it is not claimed by the Entity entitled thereto before the later of (i) one year after the Effective Date or (ii) 60 days after an Order allowing the Claim of that Entity becomes a Final Order and such entity's claim shall be deemed to be reduced to zero.

7.15    **Set-offs.**  The Disbursing Agent may, but shall not be required to set-off against the distributions to be made pursuant to the Plan, the claims, obligations, rights, causes of action and liabilities of any nature that the Debtor may hold against the holder of an Allowed Claim, provided, however, that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor or the Disbursing Agent of any such claims, obligations, rights, causes of action and liabilities that the Debtor or the Disbursing Agent has or may have against such holder.  Parties affected by set-offs will receive a three (3) day notice of such a set-off.

## ARTICLE VIII

## INJUNCTION AND RELEASES

8.1    **Injunction**.  Except (a) as otherwise provided in the Plan; or (b) as otherwise provided under the Confirmation Order entered by the Bankruptcy Court, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any claim or interest held as of the Effective Date: (i) the commencement or continuation of any action, the employment of process,

or any act to collect, enforce, attach, recover or offset from the Property or property of the Estate that has been, or is to be, distributed under the Plan, and (ii) the creation, perfection or enforcement of any lien or encumbrance against the Property or any property of the Estate that has been, or is to be transferred or distributed under the Plan.

Except as otherwise provided in the Confirmation Order, entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset, from the Debtor, from Secured Creditor or from the Property, any claim, obligation or debt that was held by any person or entity as of the Effective Date except pursuant to the terms of the Plan.  Pursuant to 11 U.S.C. § 1141(d)(3), the Debtor herein shall not receive a discharge in connection with this liquidating Plan.

8.2    **Limitation of Liability**.  Neither the Debtor, Secured Creditor nor any of its respective officers, directors, or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement, or any other action taken or omitted to be taken in connection with the Plan, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts.   Nothing in this Section 8.2 shall limit the liability of the Debtor's professionals pursuant to Rule 1.8 (h)(1) of the New York State Rules of Professional Conduct.  Nothing in the Plan or the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority

against the Debtor, Secured Creditor, or any of their respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Entities referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Entities referred to herein. Nothing in this section 8.2 of the Plan shall limit the liability of any professionals involved herein for malpractice.

8.3     **Plan and Confirmation Order as Release**.  Except as otherwise provided in the Plan, from and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to this Article 8 of the Plan.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

9.1     **Orders in Aid of Consummation.**  Pursuant to §§ 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

9.2     **Compliance with Tax Requirements.**  In connection with the Plan, the Debtor, the Disbursing Agent, and where applicable, the Disbursing Agent, shall comply with all

withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to applicable withholding and reporting requirements; providing, however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under § 1146 of the Bankruptcy Code.

9.3    **Due Authorization by Creditors.**    Each and every Creditor who elects to participate in the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

9.4    **Amendments.**  The Plan may be altered, amended or modified by Secured Creditor, in writing, signed by Secured Creditor at any time before the substantial consummation of the Plan, as provided in §§ 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

9.5    **Revocation.**  Secured Creditor may revoke or withdraw the Plan at any time prior to Substantial Consummation.  If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against the Debtor; or (ii) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor or its Estate.

9.6    **Request for Relief Under § 1129(b).**  If the Plan is accepted by one or more, but not all impaired Classes of Creditors, Secured Creditor may request confirmation under § 1129(b) of the Bankruptcy Code, subject to any modification of the Plan made pursuant to § 1127 of the Bankruptcy Code, Bankruptcy Rule 3019.

9.7    **Filing of Additional Documents.**  Except as otherwise provided in the Plan, on or before the Effective Date, Secured Creditor and the Disbursing Agent may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor (and not the Disbursing Agent), shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to applicable withholding and reporting requirements; provided, however, that the that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under § 1146 of the Bankruptcy Code.

9.8    **Section Headings.**  The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

9.9    **Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.10    **Successors and Assigns.**  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.11    **Notices.**  All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a)    if to the Debtor, to  744 Coney Island Avenue, Brooklyn, New York 11218, with a copy to the Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, New York 10036, Attn: J Ted Donovan, Esq. ; (b) if to Secured Creditor, c/o  Kriss & Feuerstein LLP, 360 Lexington Avenue, Suite 1200, New York, New York 10017, Attn: Jerold  C. Feuerstein, Esq.;

(c) if to any Creditor at (i) the addresses set forth on the applicable Proofs of Claim filed by such holder; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim, or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address; and (d) if to any Entity that has filed a notice of appearance, at the address set forth on such notice of appearance.

9.12    **Governing Law.**  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, and subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York without giving effect to the principles of conflict of laws thereof.

9.13    **Other Actions.**  Nothing contained herein shall prevent Secured Creditor, the Debtor or creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

9.14    **Severability.**  In the event any provision of the Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

9.15    **Business Day.**  In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

## ARTICLE X

## RETENTION OF JURISDICTION

10.1    **Retention of Jurisdiction.**  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a)    Insure that the Plan is consummated, and to enter an Order pursuant to § 1142(b) of the Bankruptcy Code, to compel the Debtor and any other necessary party to take such action and execute such documents to effectuate the Plan;

(b)    Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Expense and the resolution of any and all objections to the allowance or priority of Claims;

(c)    Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(d)    Resolve any motions pending on the Effective Date to assume, assume and assign, or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any and all Claims arising therefrom;

(e)    Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(f)    Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(g)     Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case;

(h)     Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(i)     Modify the Plan before or after the Effective Date pursuant to § 1127 of the Bankruptcy Code, and modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(j)     Cure any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(k)     Issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(l)     Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m)     Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

(n)     Enter and implement such orders as are necessary or appropriate to implement or consummate the proposed sale of the Property.

(o)    Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement; and

(p)    Enter an Order or Final Decree concluding the Case.

10.2    **Post-Closing Jurisdiction**.  Notwithstanding the entry of a final decree or an Order closing the case, the Bankruptcy Court shall retain jurisdiction to reopen the case for the purpose of enforcing, by injunction or otherwise, the term of the Plan, the Confirmation Order and any Final Decree, including, without limitation, the enforcement of any rights of the Debtor.

## ARTICLE XI

## CLOSING THE CASE

11.1    **Substantial Consummation**.  Until the occurrence of the Effective Date and Substantial Consummation of the Plan, the Debtor, its Property and its creditors shall be subject to further orders of the Bankruptcy Court.

11.2    **Closing the Case**.  Upon the Substantial Consummation of the Plan, and within fourteen (14) days following the full administration of the Debtor's Estate, the Disbursing Agent or the Debtor shall file, on notice to the United States Trustee's Office, an application and proposed order seeking a final decree, closing this case pursuant to Bankruptcy Rule 3022.

11.3    **Post-Confirmation Status Reports**.  The Debtor shall file quarterly post-confirmation status reports and disbursement reports and schedule post-confirmation status conferences until the closing of the Debtor's case by means of a final decree, dismissal or conversion of this case, whichever is earlier.

Dated:   New York, New York
        July 8, 2019

                                **KRISS & FEUERSTEIN LLP**
                                360 Lexington Avenue, Suite 1200
                                New York, New York 10022
                                (212) 603-6300

By:    *s/ Jerold C. Feuerstein*
        Jerold C. Feuerstein, Esq.
        Stuart L. Kossar, Esq.

        *Attorneys for 1234 Pacific Street Lender*
        *LLC*

        **1234 PACIFIC STREET LENDER LLC**

By:    *s/ David Aviram*
        *Manager*