UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

In re:                                                    Chapter 11

1234 Pacific Management LLC,                              Case No.  1:19-40026-nhl

                                   Debtor.                Hon. Nancy Hershey Lord

---------------------------------------------------------------

# DISCLOSURE STATEMENT TO SECURED CREDITOR 1234 PACIFIC STREET LENDER LLC'S PLAN OF LIQUIDATION FOR 1234 PACIFIC MANAGEMENT LLC

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, NY 10017
(212) 661-2900
Jerold C. Feuerstein, Esq.
Stuart L. Kossar, Esq.

*Attorneys for 1234 Pacific Street Lender LLC*

Dated:   New York, New York
         July 8, 2019

Secured creditor, 1234 Pacific Street Lender LLC (the "Secured Creditor" or "Plan Proponent") has filed its *Plan of Liquidation for 1234 Pacific Management LLC* (the "Plan"), with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). This *Disclosure Statement for Secured Creditor's Plan of Liquidation for 1234 Pacific Management LLC* (the "Disclosure Statement") is being submitted for the approval of the Bankruptcy Court for use in connection with the Plan filed to sell substantially all of the assets of the estate of 1234 Pacific Management LLC (the "Debtor") pursuant to § 1125 of Title 11 of the United States Code (the "Bankruptcy Code").

A copy of the Plan accompanies this Disclosure Statement. A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan.

**The Secured Creditor believes that Confirmation of the Plan is in the best interests of all the Debtor's creditors.**

SUMMARY OF THE PLAN

The Plan provides for the reorganization of the Debtor by liquidating the Debtor's sole asset, which is the real property and improvements thereon, commonly known as and located at 1232-1234 Pacific Street, Brooklyn, New York 11218 (Block 1206, Lot 28) (the "Property"), in order to generate proceeds to pay 100% of all Allowed Claims of the Debtor's estate in full with Post-Petition Interest, except claims of creditors held by insiders of the Debtor and/or equity. The Secured Creditor shall serve as the stalking horse bidder under the Secured Creditor's Plan.

The Secured Creditor has communicated with, and intends to engage Richard Maltz of Maltz Auctions, to market and sell the Property (the "Sale") in order to obtain its highest and best price, in accordance with applicable provisions of the Bankruptcy Code. The Sale shall be conducted following confirmation of the Plan, but subject to certain conditions set forth in detail herein below and in the Plan. Bidding procedures for the Sale will be set forth by separate motion, describing marketing efforts and a bidding deadline.

In the event that the Secured Creditor is the winning bidder at the Sale, the Secured Creditor, or its nominee, shall take title to the Property free and clear of all liens, claims and encumbrances pursuant to §§ 363(f) and 1123(a)(5) of the Bankruptcy Code, except that its election ownership shall be subject to the Mortgage. In addition, although the Secured Creditor shall be permitted to bid in the amount of its credit, it will have no obligation to do so.

In the event that the Secured Creditor is not the winning bidder at the Sale, and the overbid exceeds the amount of Allowed Claims of all creditors (except those of insiders of the Debtor and/or equity), then all creditors holding Allowed Claims shall receive 100% distribution from Sale Proceeds. In the event, the Secured Creditor is not the winning bidder at the Sale, and the winning bid consists of an amount which exceeds the full amount of the Secured Creditor's Secured Claim but is less than the amount necessary to pay all Allowed Claims, the Secured

Creditor will reduce its entitlement to share in Sale Proceeds by the amount necessary to pay all Allowed Claims of subordinate creditors (except those of insiders of the Debtor and/or equity) in full provided that the Secured Creditor's Secured Claim is not modified and/or adjusted.

In the event that the Secured Creditor is the winning bidder at the Sale, and the Secured Creditor's winning bid does not exceed the Secured Creditor's Secured Claim (as filed, and without adjustment), the Secured Creditor, or its nominee, shall take title to the Property free and clear of all liens, claims and encumbrances, and all creditors holding Allowed Claims (other than those of insiders of the Debtor and/or equity) shall receive a 100% distribution on account of their Allowed Claim from Cash to be supplied by the Plan Proponent which shall be paid as soon as practicable after the Effective Date (the "Cash Contribution"). The Cash Contribution shall be utilized to pay a distribution to holders of Allowed Claims and holders of Administrative Claims, fees due to the Office of the UST and Professional Fees in full.

If the Secured Creditor's credit bid exceeds the amount of the Secured Creditor's Secured Claim, the Secured Creditor shall provide proof of additional cash deposit to the Disbursing Agent as needed to close over its credit bid. Details regarding the sale shall be more fully set forth in a sale motion to be filed by the Secured Creditor contemporaneously with this Plan and Disclosure Statement.

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan. The figures set forth in the table below represents the Plan Proponent's best estimate of the total amount of Claims and Interests filed or scheduled in this Case. These estimates have been developed by the Plan Proponent based on its own research, documents provided by counsel to the New York State Department of Finance, the Court's Claims Register and certain other documents of public record. Although the Plan Proponent believes that the amounts of the Claims set forth below are substantially correct, there can be no assurance that Claims and Interests will be allowed by the Bankruptcy Court in the amounts set forth below:

| Class | Claim/Interest | Treatment of Claim/Interest | Estimated Amount of Allowed Claims or Interests[1] |
|-------|----------------|------------------------------|----------------------------------------------------|
| N/A | Bankruptcy Fees | NA | $74,500.00[2] |
| 1 | Priority/Admin Claims | Unimpaired | $47,968.71[3] |
| 2 | Secured Creditor's Secured Claim | Unimpaired | $7,726,206.09[4] |
| 3 | Other Secured Claims | Unimpaired | $968,614.63[5] |
| 4 | General Unsecured Claims | Unimpaired | $91,282.06[6] |
| 5 | Equity Interests | Unimpaired | $0.00 |

Accordingly, in the event that the Secured Creditor's Secured Claim is not reduced and/or compromised, and the Secured Creditor is the winning bidder at the Sale, the Secured Creditor is prepared to either reduce its entitlement to a distribution on account of Sale Proceeds by the sum of $1,089,672.00. Alternatively, in the event that the Secured Creditor is not the winning bidder, it is prepared to either reduce its entitlement to share in Sale Proceed and/ or simply advance Cash in the sum of $1,089,672.00 as soon as practicable after the Effective Date.

In furtherance of the Plan, the Secured Creditor has agreed to provide Cash necessary to fund distributions under the Plan as follows: (1) payment to governmental units in the full amount of their Allowed Secured Claims for real estate taxes and water and sewer use charges; (2) payment to the Secured Creditor in the full amount of its Secured Claim; (3) payment in full amounts due to other Secured Creditors (4) payment in full to amounts due to and claims of (a) the Office of the United States Trustee (b) Holders of Priority Claims (c) Allowed Administrative Creditors; and (d) Holders of Unsecured Claims.

---

[1] The amounts set forth in this schedule are not and should not be deemed admissions by the Secured Creditor as to the validity or amount of any claim and Secured Creditor reserves all rights to object to any claim in this case.
[2] Through the anticipated Effective Date of September 30, 2019, this sum contemplates four (4) quarterly disbursements at $650,00, along with a 1% disbursement of $71,500.00 to be paid on the sale of the Property.
[3] Through the anticipated Effective Date of September 30, 2019, and inclusive of $25,000.00 of (i) Debtor's counsel's legal fees and (ii) outstanding priority taxes owed by the Debtor from 1/1/2005 through 12/31/2018.
[4] Through the anticipated Effective Date of September 30, 2019, exclusive of any post-petition legal fees, costs and advances.
[5] Through the anticipated Effective Date of September 30, 2019 and including the claims of Gloria Malcolm ($852,118.41), Orlaine Edwards ($50,000.00) and outstanding Water and Sewer Charges ($38,182.71) with interest.
[6] Through the anticipated Effective Date of September 30, 2019 with interest at 4%.

**CONFIRMATION OF THE PLAN**

Pursuant to § 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a combined hearing to consider approval of this Disclosure Statement and Confirmation of the Plan, **on _____, 2019 at _____ p.m., Eastern Standard Time, in the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, New York, Courtroom 3577.** The Bankruptcy Court has directed that objections, if any, to the Approval of the Disclosure Statement or Confirmation of the Plan be filed and served on or before _____ at __:00 p.m. EST.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of § 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. The Plan Proponent intends to seek Confirmation of the Plan at the Confirmation Hearing. **The Plan Proponent believes that the Plan satisfies all applicable requirements of § 1129(a) of the Bankruptcy Code**. Confirmation makes the Plan binding upon the Debtor, its Interest Holders, all Creditors, and other parties regardless of whether they have objected to the Plan. Since no classes of claims are impaired under the Plan, all classes of claims are deemed to have accepted the Plan.

As of the Effective Date, all holders of Claims or Interests will be precluded from asserting any Claim against the Plan Proponent, the Debtor, or the Debtor's assets or Property or other interests in the Debtor based on any transaction or other activity of any kind that occurred before the Confirmation Date except as otherwise provided in the Plan.

**NO VOTING – SUMMARY**

**THE PLAN PROVIDES FOR PAYMENT IN FULL TO EACH CLASS OF CREDITORS.  AS EACH CLASS OF CLAIMS IS UNIMPAIRED, HOLDERS OF CLAIMS ARE NOT BEING SOLICITED, ARE NOT ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN AND ARE DEEMED TO HAVE ACCEPTED THE PLAN.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY PLAN PROPONENT.  THE STATEMENTS AND OPINIONS SET FORTH HEREIN IS THOSE OF PLAN PROPONENT, AND NO OTHER PARTY HAS ANY RESPONSIBILITY WITH RESPECT THERETO.**

**THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY ANY BANKRUPTCY COURT, THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE FAIRNESS OR MERITS OF THE PLAN OR UPON THE**

ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

This Disclosure Statement is being furnished by the Plan Proponent to the Debtor's known creditors pursuant to § 1125(b) of the Bankruptcy Code. The Plan has been filed with the Bankruptcy Court and is incorporated herein by reference. Parties in interest may view the Plan on the internet at http://www.nyeb.uscourts.gov.[7]

The purpose of this Disclosure Statement is to enable you, as a Creditor to make an informed decision in exercising your right to consider whether to object to the Plan.

The historical information concerning the Debtor has been prepared using certain filings made with the Bankruptcy Court. The estimates of Claims and Interests set forth herein may vary from the final amounts of Claims or Interests allowed by the Bankruptcy Court. However, the Plan provides for the allowance of the Secured Creditor's Secured Claim ($7,726,206.09) in full as secured by the Property.

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition documents, agreements, or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Plan Proponent of the existence, validity, allowance, or amount of any such claim, document or agreement. The Plan Proponent expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, as well as descriptions of certain other related documents.

While the Plan Proponent believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling. In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS." No statements or information concerning the Debtor or its assets, results of business operations or financial condition are authorized by the Plan Proponent, other than as set forth in this Disclosure Statement, its exhibit(s) and the Plan.

---

[7] A password is necessary for access to view documents on the Internet.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein.  The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

This Disclosure Statement is intended for the sole use of Creditors and Interest Holders to be informed about the Plan.  Each holder of a Claim or Interest should review this Disclosure Statement, its exhibit(s) and the Plan.  Holders of Claims or Interests are urged to consult with their own legal and financial advisors.

While no solicitations of votes to accept or reject the Plan are being made, no solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and § 1125 of the Bankruptcy Code.  No Person has been authorized to use or promulgate any information concerning the Debtor or its business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto.  You should not rely on any information relating to the Debtor or its business or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

**BACKGROUND**

**THE DEBTOR**

The Debtor's business consists of the ownership and operation of the Property, and the Debtor is a New York Limited Liability Company having an address of 744 Coney Island Avenue, Brooklyn, New York 11218.

As explained more fully below, the Property consists of twelve (12) one-bedroom residential apartment units and twenty-four (24) two-bedroom residential apartment units (collectively, the "Units") which generate substantially all of the Debtor's income, and on which Properties, no substantial business is being conducted by the Debtor other than the business of operating the Properties and activities incidental thereto.  Although the Plan Proponent believes that a majority of the units at the Property are subject to rent regulation such as the New York City Rent Stabilization Code, it makes no representations as to same.  Upon information and belief, the Debtor's members manage the Property and the Debtor remains a debtor in possession for the duration of this matter.

**THE SECURED CREDITOR & THE LOAN**

On or about June 2, 2014, Signature Bank ("Signature"), made a loan to the Debtor, in the original principal sum of $4,000,000.00 (the "Loan"). The Loan was evidenced by a Restated Note (the "Note") dated June 2, 2014, which was executed by the Debtor, through Mendy Lowy ("Lowy") as Manager of the Debtor.

To secure repayment of the indebtedness evidenced by the Note, on or about June 2, 2014, the Debtor further executed and delivered to Signature, a First Mortgage, Consolidation, Extension, Modification and Security Agreement (the "Mortgage"), which encumbered the Property in the principal sum of $4,000,000.00. The duly executed Mortgage was recorded with the Office of the City Register of the City of New York, Kings County (the "City Register") on June 12, 2014 under CRFN 2014000201863.

Additionally, in connection with the Loan, Debtor also executed an Assignment of Leases and Rents ("ALR"), in favor of Signature, pursuant to which all rents and/or other proceeds generate at the Properties became the Signature's cash collateral which was recorded with the City Register on June 12, 2014 in CRFN 2014000201864.

On or about December 22, 2015, the Note, Mortgage, and all other documents evidencing the Loan were assigned by Signature to the Secured Creditor pursuant to that certain Assignment of Mortgage (the "Assignment"), which was recorded with the City Register on February 21, 2019 under CRFN 2019000059240.

Additionally, in connection with the Assignment, Signature also executed an Assignment of Assignment of Leases and Rents ("ALR"), in favor of the Secured Creditor, pursuant to which all rents and/or other proceeds generate at the Property became the Secured Creditor's cash collateral.

## THE DEBTOR'S DEFAULT UNDER THE TERMS OF THE LOAN

As discussed in detail herein below, the Debtor defaulted under the express terms of the Loan Documents for each of the following reasons. First, the Debtor intentionally misrepresented who its equity interest holders were and the terms of its Operating Agreement in order to induce Signature to make the Loan. Next, the Debtor permitted two (2) judgment creditors to remain against the Property for an extended period in violations of the Loan Documents.

### Material Misrepresentation with Respect to Ownership

Section 2.01(b) and (e) of the Mortgage expressly provides in pertinent part, that it shall be an Event of Default if:

(b) any warranty, representation or certification made by Mortgagor or Guarantor herein with the Loan shall be materially false at the time it was made.

(e) if default shall be made in the due observance or performance of any covenant or agreement on the part of Mortgagor or Guarantor hereunder or in the Note, or in any other documents executed or delivered by the Mortgagor in connection with the Debtor.

In order to induce Signature to tender Loan proceeds, the Debtor provided an operating agreement which indicated that Mendy Lowy ("Lowy") was the 100% equity interest owner of the Debtor. Notwithstanding, the Debtor's Petition and Schedules were executed by Isaac Schwartz ("Schwartz"), as managing member of Debtor. In addition, in connection with the schedules and statements submitted by the Debtor along with the Petition, and an Operating Agreement provided by the Debtor in connection with the Debtor's § 341 Meeting, the Debtor was actually always owned 50% by Lowy and 50% Schwartz. Moreover, the Operating Agreement provided by the Debtor in connection with the Debtor's § 341 Meeting contained different material terms than the operating agreement given to Signature. Thus, the Debtor materially misrepresented who its owners were and the terms of the Operating Agreement, constituting a default under the Loan Documents as of June 2, 2014 and thereafter.

**Judgment Default**

Pursuant to Section 2.01(n) of the Mortgage, "if any judgment for $50,000.00 or more shall be rendered against Mortgagor or any Guarantor which shall not be discharged or bonded pending appeal within thirty (30) days from and after the date of entry thereof…."

Here, it is undisputed that there two (2) separate judgments against Debtor exist against the Property as follows:

1) Judgment entered March 6, 2017, in favor of Orlaine Edwards entered in Kings County Supreme Court against Debtor for $50,000.00 docketed March 6, 2017 under Control Number 003599191-01.

2) Judgment entered January 17, 2018, in favor of Gloria Malcolm entered in Kings County Supreme Court against Debtor for $830,015.00 docketed January 17, 2018 under Control Number 003709488-01.

As such, Debtor defaulted under the terms of the Loan as of March 6, 2017.

**PRE-PETITION LITIGATIONS INVOLVING THE DEBTOR:**

The Debtor's involvement in in multiple litigations is believed to have precipitated the instant Chapter 11 filing. A brief analysis of the known litigations involving the Debtor as summarized below as follows.

**Schwartz's Criminal Indictment**

On or about September 14, 2018, Schwartz was arrested and later indicted by the Queens County District Attorney in the criminal action presently pending New York State Supreme Court, County of Queens, styled ***The People of the State of New York v. Ludwig Paz, et al*** (Indictment No. 1690-2018) (the "Indictment"). Upon information and belief, the Indictment alleges that

Schwartz violated Public Law 460.20-1A Enterprise Corruption, Public Law 105.05-1, Conspiracy in the Fifth Degree, by renting the organization locations for brothels out of real property he either directly or indirectly owned, and assisting in the construction and set up of new locations. Upon information and belief, Schwartz and Lowy are partners in at least forty-one (41) unrelated parcels of multifamily real property in Brooklyn.

### The Gloria Malcom Litigation

On February 6, 2015, Gloria Malcolm ("Malcolm") filed a personal injury action in New York State Supreme Court, Kings County (the "State Court") styled *Gloria Malcolm v. 1234 Pacific Management, LLC* (Index No. 1484/2015) (the "Malcolm Action"). In that action, on or about on January 17, 2018, Malcolm was awarded a Judgment against Debtor in the sum of $830,015.00 (the "Malcolm Judgment"). On June 14, 2018, Debtor filed an application to vacate the Malcolm Judgment which was denied by decision entered on August 7, 2018. Thereafter, Malcolm sought post-judgment discovery, but upon information and belief, Malcolm failed and refused to comply. On November 26, 2018, Malcolm filed an application by order to show cause seeking to hold Debtor in contempt of court for failing to comply with post-judgment discovery. A hearing was scheduled on January 3, 2019 to determine the Debtor's punishment for failing to comply with Malcolm's discovery demands. Notwithstanding, and in an apparent attempt to avoid receiving its punishment, the Debtor filed its instant petition for Chapter 11 relief on January 2, 2019, one day prior to the January 3, 2019 hearing, staying the Malcolm Action.

### The Orlaine Edwards Litigation

On April 17, 2012, Orlaine Edwards ("Edwards") filed an action in New York State Supreme Court, Kings County (the "State Court") styled *Orlaine Edwards v. 1234 Pacific Management, LLC* (Index No. 8077/2012) (the "Edwards Action"). In the Edwards Action, a settlement agreement was reached whereby Debtor was to pay $50,000.00 to Edwards pursuant to a Release of all Claims and Stipulation of Discontinuance, both dated January 23, 2017. Upon information and belief, the Debtor failed to make the $50,000.00 payment, and as a result, judgment was entered against Debtor in the sum of $50,000.00 on March 6, 2017 (the "Edwards Judgment"). Edwards proceeded to conduct post-judgment enforcement actions including execution efforts by the New York City Marshal. On December 21, 2018, Debtor filed an application by order to show cause seeking, *inter alia*: (i) a temporary restraining order enjoining Edwards from soliciting Debtor's tenants that rent payments be made payable to her and engaging in actions which would interfere, harass or disrupt the Debtor's tenants, and (ii) a set off against the Edwards Judgment. A hearing was scheduled on January 4, 2019. However, the Debtor's filing for relief in this matter on January 2, 2019, stayed the Edwards Action.

### THE PROPERTY

Upon information and belief, the Property consists of a 36 unit apartment building. It is impossible to determine based upon the monthly operating reports ("MORs") filed by the Debtor,

how rents are allocated between each of the apartment units at the Properties. Secured Creditor believes the value of the Property as of the Petition Date to be $7,500,000.00.

## THE DEBTOR'S BANKRUPTCY FILING

On January 3, 2019 (the "Petition Date"), the Debtor filed a petition (the "Petition") for Chapter 11 bankruptcy relief before this Court under Case No. 1:19-40026-nhl, which was executed by Isaac Schwartz, as Managing Member of the Debtor.

### SIGNIFICANT POST-PETITION EVENTS IN THIS CHAPTER 11 CASE

## THE PETITION AND SCHEDULES

In its Petition and Schedules, the Debtor identifies three (3) Secured Creditors. The Debtor's secured creditors consist of; Gloria Malcom with an estimated claim of $852,118.41, Orlaine Edwards with an estimated claim of $50,000.00 and Signature Bank (Secured Creditor's assignor) with an estimated claim of $3,641,564.78. The Debtor's schedules further provide that other than the Debtor has thirteen unsecured claims which total $89,692.59, the largest general unsecured claims in the amount of $75,869.54 (to Millenium Elevator). To date, other than the Secured Creditor, no creditors have filed proofs of claims in this matter other than Consolidated Edison ("ConEd") ($194.41 – general unsecured), and the Internal Revenue Service ("IRS") ($6,702.04 – general unsecured), Gloria Malcolm ($852,118.41 – secured), New York State Department of Finance ($21,566.54 – priority), and NYC Water Board ($38,182.71 - Secured). Orlaine Edwards has also filed a Proof of Claim ($34,271.44 – secured), albeit incorrectly on the docket and not the claims register.

At the § 341 Meeting of Creditors, Schwartz appeared and advised, *inter alia*, that he and Lowy were each half owners of all of the equity of the Debtor, by virtue of their initial and equal capital contribution to the Debtor upon its formation. Schwartz further advised that he and Lowy decided that the Debtor should seek Chapter 11 relief amidst Schwartz's criminal investigations in order to settle debts which the Debtor owed to its judgment creditors.

## RETENTION OF DEBTOR'S COUNSEL

On January 30, 2019, The Yitzhak Law Group, Esq. ("Debtor's Counsel") filed an application to become retained as counsel to the Debtor (the "Retention Application"). On June February 20, 2019, Debtor's counsel amended the Retention Application and on Supplemental Affirmation to her Retention Application to disclose that she received a pre-petition retainer from a party other than the Debtor, which was applied in part and held in part prior to the Petition Date. Notwithstanding, on June 7, 2019, a Consent to Change Attorney [ECF No. 37] was filed on the Court's docket, indicating that Goldberg Weprin Finkel Goldstein LLP ("GWFG") would be substituted for the Yitzhak Law Group, and on June 14, 2019, filed an application to become retained as counsel to the Debtor. On June 17, 2019 [ECF No. 38] this Court signed an Order

authorizing GWFG as substituted counsel for the Debtor.

## OPERATING REPORTS

As of the date hereof, the Debtor has only filed monthly operating reports (each an "MOR" and collectively, the "MOR's") for the months of January 2019 and February 2019. No MOR has yet been filed for the months of March, April , May 2019, and June 2019.  The MOR's suggest that the Debtor has been generating monthly revenue but appears to be either breaking even or operating at a net loss each month.

## BAR DATE

In accordance with the requirements of § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, the Debtor filed its Schedules of assets and liabilities, including schedules of all of its known creditors and the amounts and priorities of the Claims the Debtor believes are owed to such creditors.  On April 15, 2019, the Bankruptcy Court entered an Order (the "Bar Date Order") [ECF No. 32] fixing July 2, 2019 as the last date for filing any and all claims (including governmental claims) in this matter (the "Bar Date").  The Bar Date Order provides that creditors of the Debtor shall be provided with at least thirty-five (35) days' notice of the Bar Date.

If neither the Plan Proponent nor the Debtor file an objection to a properly filed proof of claim on or before ten (10) days from Confirmation, then such Claim will be deemed Allowed and will be entitled to treatment as an Allowed Claim.  At this time, the Plan Proponent intends on objecting to any claim which has been scheduled in the Petition, but for which no prima facie proof of claim has been filed which exceeds $10,000.00, or which appears that it could be the claim of an insider, yet not disclosed as such.

## THE EXPIRATION OF THE EXCLUSIVE PERIOD

The Debtor's exclusive right to file a plan of reorganization in this Case expired on May 3, 2019, and no application to extend such time period has been filed by the Debtor prior thereto.

## NO OTHER APPLICATIONS

No other applications have been filed in this case.  The Debtor continues to remain in custody, possession and control of the Properties as a debtor-in-possession. There is a status conference scheduled for July 18, 2019 at 11:30 a.m.

**SUMMARY OF THE PLAN**

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, a copy of which accompanies this Disclosure Statement and which is incorporated herein by reference.

The Secured Creditor submits that the treatment of Creditors under the Plan is more favorable than the treatment Creditors would receive if the Chapter 11 Case were converted to a Chapter 7. Therefore, the Secured Creditor submits that the Plan is in the best interests of the Creditors and the Secured Creditor recommends acceptance of the Plan by holders of Claims in all Classes.

## THE PROPOSED SALE

The Plan provides for the reorganization of the Debtor by liquidating the Debtor's sole asset, which is the Property, in order to generate proceeds to pay 100% of all Allowed Claims of the Debtor's estate in full with Post-Petition Interest, except claims of creditors held by insiders of the Debtor and/or equity. The Secured Creditor shall serve as the stalking horse bidder under the Secured Creditor's Plan.

The Secured Creditor intends sell the Property in order to obtain its highest and best price, in accordance with applicable provisions of the Bankruptcy Code. The Sale shall be conducted following confirmation of the Plan, but subject to certain conditions set forth in detail herein below and in the Plan.  Bidding procedures for the Sale will be set forth by separate motion, describing marketing efforts and a bidding deadline.

In the event that the Secured Creditor is the winning bidder at the Sale, the Secured Creditor, or its nominee, shall take title to the Property free and clear of all liens, claims and encumbrances pursuant to §§ 363(f) and 1123(a)(5) of the Bankruptcy Code, except that its election ownership shall be subject to the Mortgage.  In addition, although the Secured Creditor shall be permitted to bid in the amount of its credit, it will have no obligation to do so.

In the event that the Secured Creditor is not the winning bidder at the Sale, and the overbid exceeds the amount of Allowed Claims of all creditors (except those of insiders of the Debtor and/or equity), then all creditors holding Allowed Claims shall receive 100% distribution from Sale Proceeds.  In the event, the Secured Creditor is not the winning bidder at the Sale, and the winning bid consists of an amount which exceeds the full amount of the Secured Creditor's Secured Claim but is less than the amount necessary to pay all Allowed Claims, the Secured Creditor will reduce its entitlement to share in Sale Proceeds by the amount necessary to pay all Allowed Claims of subordinate creditors (except those of insiders of the Debtor and/or equity) in full provided that the Secured Creditor's Secured Claim is not modified and/or adjusted.

In the event that the Secured Creditor is the winning bidder at the Sale, and the Secured Creditor's winning bid does not exceed the Secured Creditor's Secured Claim (as filed, and without adjustment), the Secured Creditor, or its nominee, shall take title to the Property free and clear of all liens, claims and encumbrances, and all creditors holding Allowed Claims (other than those of insiders of the Debtor and/or equity) shall receive a 100% distribution on account of their Allowed Claim from a Cash Contribution to be supplied by the Plan Proponent. The Cash Contribution shall be utilized to pay a distribution to holders of Allowed Claims and holders of Administrative Claims, fees due to the Office of the UST and Professional Fees in full.

If the Secured Creditor's credit bid exceeds the amount of the Secured Creditor's Secured Claim, the Secured Creditor shall provide proof of additional cash deposit to the Disbursing Agent as needed to close over its credit bid.  Details regarding the sale shall be more fully set forth in a sale motion to be filed by the Secured Creditor contemporaneously with this Plan and Disclosure Statement.

The closing of the Sale will take place as soon as practicable after entry of the Confirmation Order, but only after the closing of any objections to the Secured Creditor's Secured Claim have been resolved.  In addition, upon completion of the Sale, Kriss & Feuerstein LLP, the Plan Proponent's Disbursing Agent, shall be authorized to execute any and all documents necessary to effectuate the conveyance of the Property in accordance with the terms of the Plan, including without limitation, Bargain and Sale Deeds with Covenants, a Bills of Sale and all required transfer tax returns and ACRIS documents.  Upon the Sale, the Debtor (to the extent the Debtor is in possession of same shall turn over all leases and security deposits to the Plan Proponent or its designee for the Property.  Furthermore, on the Effective Date, the Debtor will provide the Plan Proponent, or its nominee, with an assignment and assumption of all leases at the Property and the right to collect any and all rent arrears from such tenants.

## Classification of Claims and Interests

Classification of claims is governed, in part, by §§ 1122 and 1123(a) of the Bankruptcy Code.  11 U.S.C. § 1123(a) requires that a plan designate classes of claims, requires that the plan specify the treatment of any impaired class of claims, and requires that the plan provide the same treatment for each claim of a particular class, unless the holder of a claim receiving less favorable treatment consents to such treatment. 11 U.S.C. § 1123(a)(1), (3) and (4).  11 U.S.C. § 1122(a) of the Bankruptcy Code provides, subject to an exception for administrative convenience, that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

Article 3 of the Plan classifies the various Claims against and Interests in the Debtor into Six (6) classes of Claims and one (1) class of Interests:

**Class 1** -    **Priority/Admin Claims**
**Class 2** -    **Secured Creditor's Secured Claim**
**Class 3** -    **Other Secured Claims**
**Class 4** -    **General Unsecured Claims**
**Class 5** -    **Equity Interests Holders**

Since no classes of claims are impaired under the Plan, holders of all classes of claims and claimholders are conclusively deemed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code and no voting or balloting will be conducted under the Plan.  As set forth in Article 2 of the Plan, pursuant to § 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims against the Debtor have not been classified.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

**Class 1 – Priority/Admin Claims.**  Class 1 consists of all Allowed and/or Priority Claims, including a Claim for Debtor's Counsel's legal fees and outstanding taxes owed by the Debtor to New York State Department of Taxation and Finance for unpaid and outstanding income and/or corporate taxes allegedly owed by the Debtor.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."  As of the date hereof, the only known priority claim is a claim filed by Department of Finance (Claim No. 5) for outstanding priority taxes owed by the Debtor from 1/1/2005 through 12/31/2018, and $25,000.00 for the Debtor's counsel's legal fees.

**Class 2 – Secured Creditor's Secured Claim**.  Class 2 consists of the Secured Creditor's Secured Claim in the amount of $7,726,206.00.

**Class 3 – Other Secured Claims**.  Class 3 consists of Gloria Malcolm's Allowed Secured Claim against the Property, which as of the Petition Date existed in the amount of $852,118.41, (ii) Orlaine Edwards Allowed Secured Claim with a scheduled claim of $50,000.00 and (iii) water and sewer charges in the sum of $38,182.71 for a total of $940,301.12.

**Class 4 – General Unsecured Claims.**  Class 4 consists of General Unsecured Claims, which have been scheduled in the Debtor's petition and schedules, or upon which proofs of claims have been filed in the Court's Claims Register.  General Unsecured Claims presently amount to a total of $88,613.80.  A complete list of all known general unsecured claims is as follows:

| **Creditor** | **Claim amount** |
| --- | --- |
| Millennium Elevator | $75,869.54 |
| Pacific Management Inc | $8,178.74 |
| Corner Hardware | $2,021.81 |
| Kings County Exterminators | $1,139.79 |
| SDL Appliance Repair Service | $626.03 |
| AAA Appliances | $348.40 |

15

| | |
|---|---|
| Lead Investigation | $300.00 |
| Metro Elevator Inspection Services LLC | $295.00 |
| Advanced Reglazing | $234.08 |
| Linda Strauss Esq | $220.00 |
| Gleaned Law Firm LLP | $195.00 |
| M&M Glass | $174.20 |
| NYC Fire Department | $90.00 |
| Consolidated Edison (Claim 1-1) | $197.41 |
| Capital One Bank (USA), N.A. (claim 4-1) | $200.50 |

**Class 5 – Equity Interests.** Class 5 consists of all Equity Interests in the Debtor.

TREATMENT OF CLAIMS AND INTERESTS CLASSIFIED UNDER THE PLAN

Articles 4 and 5 of the Plan provide for the treatment of Claims classified in Article 3 of the Plan as follows:

**Class 1 – Priority Claims.** Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in satisfaction, release and discharge of their Claims, a holder of the Class 1 Claims shall receive cash in the full amount of its Claim from either Sale Proceeds and/or Cash, either on the Effective Date, or as soon thereafter as practicable.

**Class 2 – Secured Creditor's Secured Claim**. In full satisfaction, release and discharge of the Secured Creditor's Secured Claim, the Secured Creditor may either (i) obtain fee title to the Property free and clear of all liens, claims and encumbrances by virtue of its purchase of the Property through a combination of credit bidding its Allowed Claim and paying into the Cash Contribution. On the Effective Date, the Secured Creditor's Secured Claim is estimated to be $7,726,206.09 as of the anticipated September 30, 2019 Effective Date, which claim may be adjusted to include any and all post-petition charges, penalties, attorney's fees, accrued interest, protective advances and all other sums that the Secured Creditor is entitled to pursuant to the Note and Mortgage incurred after the Petition Date. In the event that the Secured Creditor becomes the Successful Purchaser, it may be required to pay a certain Cash Contribution at the closing of the Sale of the Property, which amount shall be deposited in escrow with the Disbursing Agent no later than seven (7) days prior to the auction Sale. At the closing, the Property shall be conveyed to the Secured Creditor or the Successful Purchaser, or their nominee, subject only to the Secured Creditor's existing Mortgage of record if the Secured Creditor so elects in its sole discretion. Alternatively, in the event that the Secured Creditor is outbid at the Sale, it shall receive payment from Sale Proceeds on the Effective Date or as soon thereafter as may be practicable.

**Class 3 – Other Secured Claims.** Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in satisfaction, release and discharge of their Claims, the holders of the Class 3 Claims shall receive cash in the full amount of their Claims from Sale Proceeds. The Class 3 Secured Claim of Orlaine Edwards shall be fixed at $50,000.00

(through September 30, 2019) plus post-petition interest at a rate of 4%. The Class 3 Secured Claim of Gloria Malcolm shall be fixed at $852,118.41 (through September 30, 2019) plus post-petition interest at a rate of 4%.

    **Class 4 – General Unsecured Claims.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of all Allowed Unsecured Claims (excluding deficiency claims), on the Effective Date, each holder of an Allowed Unsecured Claim shall receive cash in the full amount of its Allowed Unsecured Claim from the Sale Proceeds with interest at 4%.  It is estimated that on the Effective Date, the Unsecured Creditors' Claims shall total no more than $91,282,06 with interest.

    **Class 5 – Equity Interests**.  Equity Interests shall not receive a distribution under the Plan, unless surplus proceeds exist, if any, after payment to all allowed classified and unclassified claims against the Debtor's Estate.   Interests of Equity shall not be extinguished, and the Debtor shall remain responsible for either managing or winding down its own affairs..  While Equity Interests may be impaired, they are not entitled to vote.

### TREATMENT OF NON-CLASSIFIED CLAIMS

    Pursuant to § 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under § 507(a)(2) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code.  Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

    **Administrative Claims.**   Administrative Claims are the costs and expenses of administration of this Case, allowable under § 503(b) of the Bankruptcy Code, other than Bankruptcy Fees.  Administrative Claims include Claims for the provision of goods and service to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor's business (other than claims of governmental units for taxes or interest or penalties related to such taxes) after the Petition Date, Claims of professionals, such as attorneys, brokers, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under § 330 of the Bankruptcy Code, and tax claims for the period from the Petition Date to the Effective Date of the Plan.

    Each holder of an Allowed Administrative Claim shall receive cash in the full amount of its Administrative Claim.  It is estimated that the Administrative Claims total not more than $25,000.00, which consists of the Debtor's counsel's professional fees.

    Each Administrative Claim, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Administrative Claim, or (ii) as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim, provided, however, that any Allowed Administrative Claim incurred by the Debtor in

the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim and any agreements relating thereto.

Article 2 of the Plan sets a final date for the filing of Administrative Claims against the Debtor. The Administrative Bar Date is the first Business Day that is ten (10) days after Confirmation.

**Bankruptcy Fees.** All fees and charges assessed against the Debtor of its Estate under § 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid by the Disbursing Agent in Cash in full as required by statute, and until the closing, conversion or dismissal of this case, whichever is earlier. The Disbursing Agent shall continue to be responsible for the payment of any such fees and charges. It is estimated that Bankruptcy Fees and charges will be approximately $74,500.00, or such greater sum as necessary to satisfy the Office of the United States Trustee.

**Professional Fees.** 11 U.S.C. § 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained by the Debtor in a case under the Bankruptcy Code. In general, bankruptcy legal services are entitled to command the same competency of counsel as other cases. "In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable service other than in a case under title 11." 124 Cong. Rec. H11091 (Daily ed. Sept. 28, 1978).

Reasonable compensation due to the Debtor's retained professionals pursuant to § 330 of the Bankruptcy Code, as determined by the Bankruptcy Court, shall be payable in full and in Cash on the Effective Date unless otherwise agreed to in writing between the holder of such claim and the Debtor and approved by the Bankruptcy Court. After speaking with the Debtor's counsel, it is estimated that the Debtor's professional's compensation should not exceed $25,000.00.

## DISPUTED CLAIMS

Article 7 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims asserted against the Debtor by any Entity. The Secured Creditor has every intention of litigating with the large and unexplained unsecured claims listed by the Debtor in its Petition and Schedules, but upon which no proof of claim has been filed, before the Bankruptcy Court.

**Time to Object.** Unless otherwise ordered by the Bankruptcy Court, objections any party in in interest may object to the allowance of any Claim filed with the Bankruptcy Court in whole or in part by serving and filing an objection to such Claim no later than ten (10) days after Confirmation; provided, however, that the Disbursing Agent or the Disbursing Agent may file and

serve any objection to any Claim at any time, but in no event after the later to occur of (i) thirty (30) days after the Effective Date or (ii) thirty (30) days after the date Proof of such Claim or a request for payment of such claim is filed. Until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, Claims shall be deemed to be Disputed in their entirety if, (x) the amount specified in a Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (y) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (z) no corresponding Claim has been listed in the Schedules.

## DISTRIBUTIONS UNDER THE PLAN

Article 7 contains provisions governing the making of Distributions on account of Claims and Interests. In general, any payments, distributions or other performance to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest shall be deemed to be timely made if made on or within fifteen (15) days following the later of (i) the Effective Date, or (ii) the expiration of any applicable objection deadline with respect to such Claim or Interest, or (iii) such other time provided in the Plan. All Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank.

**Disbursing Agent.** In the event that the Secured Creditor is the Successful Bidder at the Sale, then and only then, will Kriss & Feuerstein LLP act as the Disbursing Agent, in order to make Distributions under the Plan for all claims against the Debtor's Estate. The Disbursing Agent shall not be compensated for services rendered under the Plan and shall not be required to secure a bond. The Disbursing Agent shall not incur any liability, other than for gross negligence, willful misconduct, criminal conduct, or for any claim for liability pursuant to 28 U.S.C. § 959 in connection with carrying out its duties under the Plan, which liability shall be expressly limited to the period commencing from the date of the Disbursing Agent's receipt of the Cash Contribution and ending on the date that all disbursements contemplated by the Plan have been distributed.

In the event that the Secured Creditor is not the Successful Bidder under the Plan, the auctioneer retained in the Sale Motion to be filed by the Secured Creditor shall act as Disbursing Agent, and in connection therewith, will be responsible for collecting all sale proceeds and paying all distributions pursuant to the Plan. In the event that the Secured Creditor is not the Successful Bidder at the Sale, a commission will be due the Disbursing Agent pursuant to the terms and conditions set forth in the Sale Motion, to be filed by the Secured Creditor.

Distributions shall be made: (1) at the addresses set forth on the Proofs of Claim or Proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim or Proof of Interest; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address. If the Distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as

undeliverable, no further Distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address.

## UNCLAIMED DISTRIBUTIONS

Any Cash or other property to be distributed under the Plan shall revert to the Disbursing Agent and such creditor shall forfeit its right to receive any Distribution(s) under this Plan if such Distribution is not claimed by the Entity entitled thereto before the later of (i) 90 days after the Effective Date or (ii) 90 days after an Order allowing the Claim of that Entity becomes a Final Order or are otherwise Allowed. Any such forfeited sums shall then be retained by the Plan Proponent.

## DISTRIBUTIONS WITH RESPECT TO DISPUTED CLAIMS

During the pendency of any objection to any Claim, no Distribution under the Plan will be made to the holder of such Claim. However, there will be set aside and reserved on behalf of such disputed Claim such cash or property as the holder thereof would be entitled to receive in the event such Claim was an Allowed Claim on the date of such Distribution. The Debtor may seek an order of the Bankruptcy Court estimating or limiting the amount of Cash or property that must be deposited in respect of any such Disputed Claims. Cash held in reserve for Disputed Claims will be held in trust for the benefit of the holders of such Claims.

Within 15 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim. To the extent practicable, the Disbursing Agent shall hold such cash in a segregated account in accordance with § 345 of the Bankruptcy Code, and may invest any cash or other property segregated on account of a Disputed Claim, Disputed Interest, undeliverable distribution, or any proceeds thereof; however, the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

## SURRENDER OF INSTRUMENTS

No Creditor that holds a note or other instrument of the Debtor evidencing such Creditor's Claim may receive any distribution with respect to such Claim or Interest unless and until the note or other instrument evidencing such Claim is surrendered pursuant to the provisions of the Plan. In the event an instrument evidencing a claim has been lost, stolen or mutilated, the Disbursing Agent may request reasonable affidavits and indemnification by a financially responsible party before making any distribution(s) to such Creditor.

### COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, the Debtor shall not be relieved of, and shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and distributions under the Plan shall be subject to such withholding and reporting requirements.

### EFFECTIVE DATE

The Effective Date of the Plan is defined as the Closing Date of the sale of the Property or such earlier date as may be designated by the Disbursing Agent after any objection to the Secured Creditor's Secured Claim has been resolved.

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Effective on and as of the Effective Date, all Executory Contracts and Unexpired Leases to which the Debtor is a party shall be deemed rejected in accordance with § 365 of the Bankruptcy Code, EXCEPT those pertaining to leases between the Debtor and tenants at the Property. The Plan Proponent does not believe that there are any executory contracts and unexpired leases which would be subject to rejection since all leases are believed to be between the Debtor and tenants at the Property. For the avoidance of doubt, only residential leases between the Debtor and tenants at the Property shall remain in full force and effect subject to their terms. In addition, on the Effective Date, the Disbursing Agent may provide the Plan Proponent, or its nominee, with an assignment and assumption of all residential leases at the Property and the right to collect any and all rent arrears from existing tenants.

**Rejection Claims**. Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor pursuant to the Plan shall be treated as Unsecured Claims. A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be filed with the Bankruptcy Court and served so that it is received by the Disbursing Agent within 15 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the date the Plan is Confirmed. Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against either the Debtor, the Plan Proponent (or its nominee), their successors or their respective Property.

### TRANSFER OF THE PROPERTY

Except as otherwise provided in the Plan, on the Effective Date all of the assets and Property of the Debtor's Estate shall vest in the Plan Proponent, or its nominee, free and clear of all Liens, Claims and encumbrances and the Debtor shall cooperate with the execution of any and all documents needed to facilitate the transfer of the Property. On the Effective Date, any and all

Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.  Furthermore, on the Effective Date or as soon as practicable thereafter, all rent arrears, leases, insurance claims and proceeds thereof to which the Debtor was entitled, shall be assigned by the Disbursing Agent to the Plan Proponent and/or its nominee.

## FUNDING

The Plan will be funded by monies made available from the Sale of the Property; however, plan proponent shall advance certain monies to the Disbursing Agent (which monies shall be held in escrow until Plan Proponent is authorized and/or directed to disburse such sums), which shall be deemed to be allowed administrative expenses, which are required to effectuate the sale of the Property.

The Disbursing Agent shall take all necessary steps and perform all acts to consummate the terms and conditions for the Plan, and the Debtor shall not interfere with the Disbursing Agent in the performance of its duties. The Confirmation Order shall contain appropriate provisions consistent with § 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the extension or delivery of any instrument required to affect the Plan or to perform any act necessary to consummate the Plan.

Except as set forth elsewhere in the Plan, all payments required to be made under the Plan shall be made by the Disbursing Agent for disbursement in accordance with the terms of the Plan.

## PRESERVATION OF RIGHTS OF ACTION

The Debtor shall retain, and in accordance with its determination of the best interest of the estate, may enforce any claims, rights and causes of action (i) arising under §§ 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate, and arising under any provision of state or federal law, or any theory of statutory or common law or equity.

## POST-CONFIRMATION OPERATING REPORTS AND UNITED STATES TRUSTEE'S FEES

The Debtor's duty to prepare and file post-confirmation monthly operating reports shall continue until the closing of this case by means of a final decree, dismissal or conversion of this case, whichever is earlier. Within 10 days of the Effective Date or as soon as practicable thereafter, the Disbursing agent shall file a closing report detailing all disbursements made at the closing on the Property.  All outstanding quarterly fees and any applicable interest due thereon payable to the Office of the United States Trustee shall be paid by the Disbursing Agent until entry of a final decree, conversion or dismissal, whichever is earlier.

## TRANSFER TAXES

Pursuant to § 1146(a) of the Bankruptcy Code, the initial issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan (including any instrument executed in furtherance of the transactions contemplated by the Plan including but not limited to the sale of the Property to the Plan Proponent) shall be exempt and shall not be subject to tax under any law imposing a Transfer Tax, mortgage recording tax or similar tax as set forth in the Plan. In connection therewith, the Plan Proponent shall have the protections afforded under the "good faith" purchaser provisions of § 363(m) of the Bankruptcy Code and all stay provisions under Bankruptcy Rule 6004(h) or elsewhere will be waived.

## REVOCATION OF THE PLAN

The Plan may be altered, amended, modified or withdrawn by the Plan Proponent at any time before Substantial Consummation of the Plan, as provided in §§ 1101(2)(A) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. § 1127 of the Bankruptcy Code authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain technical requirements of §§ 1122 and 1123 of the Bankruptcy Code with respect to the classification of Claims and Interests and the contents of a plan. Prior to Confirmation, if a Plan Proponent files a modification to the Plan, pursuant to § 1127(a) "the plan as modified becomes the plan." No order of the Court is required to modify the Plan under the terms of § 1127(a); however, the proponent of a modification to a plan must comply with § 1125 of the Bankruptcy Code with respect to the plan as modified.

Secured Creditor may revoke or withdraw the Plan at any time prior to Substantial Consummation of the Plan. If the Plan Proponent revokes or withdraws the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interest in the Debtor in any further proceedings involving the Debtor.

## RETENTION OF JURISDICTION

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating to Claims or Interests and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan.

## RISK FACTORS

Plan payments are to be made from the Sale proceeds which will come primarily from the Cash Contribution. There can be no assurance that the sale of the Property will occur.

## CONFIRMATION OF THE PLAN

All Distributions to holders of Allowed Claims are contingent on the Plan being confirmed by this Court.  Otherwise, the Debtor is not obligated to make the payments required hereunder.

### CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. **The Confirmation Hearing is scheduled to commence on _____, 2019 at 10:00 a.m. in the United States Bankruptcy Court, 271-C Cadman Plaza East, Brooklyn, New York.**  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

The Bankruptcy Court has directed **that objections, if any, to confirmation of the Plan be filed and served on or before _____ at 5:00 p.m.** Objections must be served upon (i) Counsel to the Debtor: Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, New York 10036, Attn: J Ted Donovan, Esq., (ii) Counsel to the Plan Proponent, Kriss & Feuerstein LLP., 360 Lexington Avenue, Suite 1200, New York, New York, New York 10017 – Attn:  Jerold C. Feuerstein, Esq., (iii) The United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014-9449 and be filed electronically in accordance with the Court's ECF procedures.

### REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of § 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims and Interests in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Plan Proponent has proposed the Plan in good faith, (iv) the Plan Proponent has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interests" of all Creditors and Interest Holders; and (vi) the Plan is feasible.  The Plan Proponent believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.**  The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code.

To determine what the holders in each Class of Claims or Interest would receive if the Debtor were liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount

24

that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation case. The amount that would be available for satisfaction of Allowed Claims against and Allowed Interests in the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtor.  Such amount would be reduced by the amount of any Claim or Claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor' business. Such value is then juxtaposed against the amount creditors are receiving under the Plan to determine if the value each impaired creditor is receiving is the same or more than such creditor would receive from a Chapter 7 liquidation on the Confirmation Date.

The costs of liquidation under Chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation.  Such costs would include the fees payable to a Chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such trustee may engage to assist in the liquidation.  In addition, Chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation.   Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the Case in chapter 11.

After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this Case was pending under chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.

**Liquidation Analysis.**  The Plan Proponent has concluded that the Plan provides to each Creditor and Interest Holder a recovery with a *present value* which equals the distribution that such person would receive if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code.  The Plan provides for the Debtor's reorganization, the payment of all of the Debtor's outstanding secured indebtedness, and 100% plus interest to holders of all other Allowed Claims. Since Creditors would not be entitled to receive more than 100% plus interest in a Chapter 7 liquidation, § 1129(a)(7) of the Bankruptcy Code is satisfied.

**Feasibility.**  For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. This Plan calls for the sale of the Debtor's Property to the Plan Proponent.  Thus, the Plan meets the feasibility requirements of the Bankruptcy Code as long as the Plan Proponent deposits the Cash Contribution in Escrow prior to the Confirmation Hearing.

## EFFECT OF CONFIRMATION

### LIMITATION OF LIABILITY

**11 U.S.C. § 1125(e) of the Bankruptcy Code, commonly referred to as the "safe harbor," protects persons acting in good faith, from civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a security under the Plan. Pursuant to § 1125(e), as set forth in Article 8 of the Plan, neither the Plan Proponent or its nominee, nor any of their respective officers, directors, members, general partner, managers or employees (acting in such capacity), nor any professional person employed by any of them shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any other action taken or omitted to be taken in connection with the Plan except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing contained herein shall limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released to the extent provided by Article 8 of the Plan.**

### INJUNCTION

**Except (a) as otherwise provided in the Plan; or (b) as otherwise provided under the Confirmation Order entered by the Bankruptcy Court, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any claim or interest held as of the Effective Date: (y) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property or property of the Estate that has been, or is to be, distributed under the Plan, and (z) the creation, perfection or enforcement of any lien or encumbrance against the Property or any property of the Estate that has been, or is to be transferred or distributed under the Plan.**

**Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset, from the Debtor, Plan Proponent or from the Property or property of the Estate, any claim, obligation or debt that was held by any person or entity as of the Effective Date except pursuant to the terms of the Plan.**

**RELEASE**

**Except as otherwise provided in the Plan, upon the Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between among the Debtor, on the one hand, and each Creditor and Interest Holder, on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtor, its Creditors or Interest Holders ever had or now have through the Effective Date in connection with their Claim or Interest (including, without limitation, any claims the Debtor may assert on its own behalf or on behalf of Creditors or Interest Holders pursuant to §§ 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtor absent bankruptcy, any claims based on the conduct of the Debtor's business affairs prior or subsequent to the commencement of the Case or any claims based on the negotiation, submission and confirmation of the Plan), provided however that nothing in the Plan or the Confirmation Order shall effect a release of any claim for any debt owed to the United States Government arising under the Internal Revenue Code; any state, city or municipality arising under any state, city or municipal tax code;  any environmental laws or any criminal laws of the United States or any state, city or municipality.  Nothing in the Confirmation Order or the Plan shall enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Entities for any claim, suit or action arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state, city or municipality.  Nothing in the Confirmation Order or the Plan shall exculpate any party from any liability to the United States Government or any of its agencies or any state, city or municipality arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state, city or municipality.**

### ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include (a) liquidation of the Debtor under chapter 7 of the Bankruptcy Code or (b) the formulation, promulgation and confirmation or an alternative plan of reorganization involving a sale to a different purchaser; or (c) the dismissal of the Debtor's case.

The Plan Proponent believes that the Plan provides a recovery to all Creditors and Interest Holders equal to or greater than would be obtainable in chapter 7 liquidation or foreclosure sale and believes that the Plan enables Creditors to realize the most value under the circumstances.

The Plan Proponent reserves their right to file an amended plan and/or disclosure statement.

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possible arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

The Plan Proponent have not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will the Plan Proponent, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel. Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS. The Plan Proponent offers no statements or opinions that are to be relied upon by the creditors as to the treatment of creditors' claims under the Plan. Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim or Equity Interest

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Creditors and Interest Holders will differ and will depend on factors specific to each Creditor or Interest Holder, including but not limited to: (i) whether the Claim or Interest (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim or Interest; (iii) the type of consideration received by the Creditor or Interest Holder in exchange for the Claim or Interest; (iv) whether the Creditor or Interest Holder is a United States person or foreign person for tax purposes; (v) whether the Creditor or Interest Holder reports income on the accrual or cash basis method; (vi) whether the Creditor or Interest Holder has taken a bad debt deduction or otherwise recognized loss with respect to a Claim or Interest.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR OR INTEREST HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE, IT IS IMPORTANT THAT EACH CREDITOR OR INTEREST HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR OR INTEREST HOLDER AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR OR INTEREST HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR OR INTEREST HOLDER SHOULD SEEK ADVICE BASED UPON THE CREDITOR'S OR INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

### ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to (i) Counsel to the Debtor: Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, New York 10036, Attn: J Ted Donovan, Esq., (ii) Counsel to the Plan Proponent, Kriss & Feuerstein LLP., 360 Lexington Avenue, Suite 1200, New York, New York, New York 10017 – Attn:  Jerold C. Feuerstein, Esq., (iii) The United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014-9449 and be filed electronically in accordance with the Court's ECF procedures. Documents submitted in these cases are on file in the Office of the Clerk of the United States Bankruptcy Court, Eastern District of New York, 271-C Cadman Plaza, Brooklyn, New York 11201, and are available for public inspection Monday through Friday, between the hours of 9:00 a.m. and 5:00 p.m.

### CONCLUSION

The Plan Proponent believes that confirmation of the Plan is in the best interests of all Creditors.

Dated: New York, New York
July 8, 2019

> **KRISS & FEUERSTEIN LLP**
> 360 Lexington Avenue, Suite 1200
> New York, NY 10017
> (212) 661-2900
>
> By: *s/ Jerold C. Feuerstein*
> Jerold C. Feuerstein, Esq.
> Stuart L. Kossar, Esq.
>
> *Attorneys for 1234 Pacific Street Lender LLC*
>
> **1234 PACIFIC STREET LENDER LLC**
>
> By: *s/ David Aviram*
> *Manager*