**KRISS & FEUERSTEIN LLP**
Jerold C. Feuerstein, Esq.
Stuart L. Kossar, Esq.
360 Lexington Avenue, Suite 1200
New York, NY 10017
(212) 661-2900
(212) 661-9397 – facsimile
jfeuerstein@kandfllp.com
skossar@kandfllp.com

*Attorneys for 1234 Pacific Street Lender LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| 1234 Pacific Management LLC, | Case No.  1:19-40026-nhl |
| Debtor. | Hon. Nancy Hershey Lord |

-----------------------------------------------------------X

### APPLICATION FOR ENTRY OF AN ORDER, (I) APPROVING DISCLOSURE STATEMENT; (II) SCHEDULING HEARING ON CONFIRMATION OF THE PLAN; AND (III) APPROVING RELATED PROCEDURES

TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE:

1234 Pacific Street Lender LLC (the "Secured Creditor" and/or "Plan Proponent"), as a secured creditor and mortgagee of the Debtor, 1234 Pacific Management LLC (the "Debtor"), and an interested party in this Chapter 11 case (the "Chapter 11 Case"), hereby moves (the "Motion") before the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") for the entry of an  Order pursuant to §§ 105(a), 363, 502, 1123(a), 1124, 1125, 1126, and 1128 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), Rules 2002, 3003, 3016, 3017, 3018, 3019, and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 3017-1, 3018-1, 3019-1, 3020-1 and 3020-2 of the Local Rules of this Court (the "Local Rules"), (i) approving the *Disclosure Statement to the Secured Creditor's Plan of Liquidation for the Debtor* [ECF No. 41] (the "Disclosure Statement");  (ii)  scheduling a

hearing on confirmation (the "Confirmation Hearing") of the *Secured Creditor's Plan of Liquidation for the Debtor* [ECF No. 40] (the "Plan"); (iii) approving procedures relating to the sale of the Debtor's real property commonly known as 1232-1234 Pacific Street, Brooklyn, New York 11218 (Block 1206, Lot 28)  (the "Property") and form of notice of the bid procedures; (iv) scheduling an auction and sale hearing (the "Sale Hearing") to approve the sale of the Property to the successful bidder (the "Successful Bidder") pursuant to 11 U.S.C. § 105(a), 363 and Rule 2002 of the Bankruptcy Rules; (v) establishing a deadline and procedures for filing objections to confirmation of the Plan; (vi) approving  form and manner of Notice of Hearing on Confirmation and related issues and approving procedures, and (viii) granting such other related relief as this Court deems just and proper.  In support of the Motion, the Plan Proponent respectfully represents as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are §§ 105(a), 363, 502, 1123(a), 1124, 1125, 1126, and 1128 of the Bankruptcy Code, Rules 2002, 3003, 3016, 3017, 3018 and 3020 of the Bankruptcy Rules, and Rules 3017-1, 3018-1, 3019-1, 3020-1 and 3020-2 of the Local Bankruptcy Rules for the Eastern District of New York.

### BACKGROUND

3.      On January 3, 2019 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, before the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court").   The Debtor continues in

possession of its assets and management of its business as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

4.      The Debtor's business consists of the ownership and operation of the Property, and the Debtor is a New York Limited Liability Company having an address of 744 Coney Island Avenue, Brooklyn, New York 11218.  As explained more fully below, the Property which contain residential apartment units generate substantially all of the Debtor's income, and on which Property, no substantial business is being conducted by the Debtor other than the business of operating the Property and activities incidental thereto. The Plan Proponent makes no representations as to whether the residential units at the Property are subject to rent regulation such as the New York City Rent Stabilization Code.  Upon information and belief, the Debtor's sole source of income is from rents generated by the Property. Upon information and belief, the Debtor's members manage the Property and the Debtor remains a debtor in possession for the duration of this matter.

**THE SECURED CREDITOR & THE LOAN**

5.      On or about June 2, 2014, Signature Bank ("Signature"), made a loan to the Debtor, in the original principal sum of $4,000,000.00 (the "Loan"). The Loan was evidenced by a Restated Note (the "Note") dated June 2, 2014, which was executed by the Debtor, through Mendy Lowy ("Lowy") as Manager of the Debtor.

6.      To secure repayment of the indebtedness evidenced by the Note, on or about June 2, 2014, the Debtor further executed and delivered to Signature, a First Mortgage, Consolidation, Extension, Modification and Security Agreement (the "Mortgage"), which encumbered the Property in the principal sum of $4,000,000.00.  The duly executed Mortgage was recorded with the Office of the City Register of the City of New York, Kings County (the "City Register") on

June 12, 2014 under CRFN 2014000201863.

7.    On or about December 22, 2015, the Note, Mortgage, and all other documents evidencing the Loan were assigned by Signature to the Secured Creditor pursuant to that certain Assignment of Mortgage (the "Assignment"), which was recorded with the City Register on February 21, 2019 under CRFN 2019000059240.  In connection with the Assignment, Signature also executed an Assignment of Assignment of Leases and Rents ("ALR") in favor of the Secured Creditor, pursuant to which all rents and/or other proceeds generate at the Property became the Secured Creditor's cash collateral.

8.    The Debtor defaulted under the terms of the Note and Mortgage by making material misrepresentations as to who its equity interest holders were to induce Signature to provide the Debtor with the subject mortgage Loan. The aforesaid material misrepresentations were confirmed at the Debtor's § 341 Meeting of Creditors.  In addition, Debtor's operating agreement provided to Signature at the time of origination contains terms that were substantially different than the operating agreement provided at Debtor's § 341 Meeting of Creditors constituting a default under the Loan.

9.    The Debtor also defaulted under the terms of the Note and Mortgage. Pursuant to Section 2.01(n) of the Mortgage, "if any judgment for $50,000.00 or more shall be rendered against Mortgagor or any Guarantor which shall not be discharged or bonded pending appeal within thirty (30) days from and after the date of entry thereof…"  Here, there are two separate judgments entered against the Debtor; (i) Judgment in favor of Orlaine Edwards entered in Kings County Supreme Court against Debtor for $50,000.00 docketed March 6, 2017 under Control Number 003599191-01 and (ii) Judgment in favor of Gloria Malcolm entered in Kings County Supreme Court against Debtor for $830,015.00 docketed January 17, 2018 under Control Number

003709488-01. As such, Debtor has further defaulted under the Loan.

**THE PROPERTY**

10.     Upon information and belief, the Property consists of a 36 unit apartment building. It is impossible to determine based upon the lack of monthly operating reports ("MOR's") filed by the Debtor, how rents are allocated between each of the apartment units at the Property.

**PRE-PETITION LITIGATIONS INVOLVING THE DEBTOR**

11.     On February 6, 2015, Gloria Malcolm ("Malcolm") filed a personal injury action in New York State Supreme Court, Kings County (the "State Court") styled *Gloria Malcolm v. 1234 Pacific Management, LLC* (Index No. 1484/2015) (the "Malcolm Action"). Debtor defaulted in the Malcolm Action and after an inquest a Judgment was entered against Debtor in the sum of $830,015.00 on January 17, 2018 (the "Malcolm Judgment"). On June 14, 2018, Debtor filed an application to vacate the Malcolm Judgment, but it was denied by the State Court by decision entered on August 7, 2018. Thereafter, Malcolm sought post-judgment discovery, but Debtor would not comply. On November 26, 2018, Malcolm filed an application by order to show cause seeking to hold Debtor in contempt of court for failing to comply with post-judgment discovery. A hearing was scheduled on January 3, 2019. However, Debtor filed its instant petition on January 2, 2019, prior to the January 3, 2019 hearing, staying the Malcolm Action.

12.     On April 17, 2012, Orlaine Edwards ("Edwards") filed an action in New York State Supreme Court, Kings County (the "State Court") styled *Orlaine Edwards v. 1234 Pacific Management, LLC* (Index No. 8077/2012) (the "Edwards Action"). In the Edwards Action, a settlement agreement was reached whereby Debtor was to pay $50,000 to Edwards pursuant to a Release of all Claims and Stipulation of Discontinuance, both dated January 23, 2017. Debtor failed to make the $50,000.00 and a judgment was entered against Debtor in the sum of $50,00.00

on March 6, 2017 (the "Edwards Judgment"). Edwards proceeded to conduct post-judgment enforcement actions including execution efforts by the New York City Marshal.  On December 21, 2018, Debtor filed an application by order to show cause seeking, *inter alia*: (i) a temporary restraining order enjoining Edwards from soliciting Debtor's tenants that rent payments be made payable to her and engaging in actions which would interfere, harass or disrupt Debtor's tenants, and (ii) a set off against the Edwards Judgment.  A hearing was scheduled on January 4, 2019. However, Debtor filed its instant petition on January 2, 2019, prior to the January 4, 2019 hearing, staying the Edwards Action.

13.     Debtor's principal, Issac Schwartz, has also been the subject of criminal proceedings.  In 2018, the Queens County District Attorney filed an action in the New York State Supreme County of Queens, Queens County, styled *The People of the State of New York v. Ludwig Paz, et al.* (Indictment No. 1690-2018), indicting multiple individuals, including Schwartz (the "Indictment").  The indictment alleged, *inter alia*, that Schwartz violated Public Law 460.20-1A Enterprise Corruption, Public Law 105.05-1, Conspiracy in the Fifth Degree. The Indictment also alleged that Schwartz was a landlord for a prostitution organization, in that knowing the full nature of the prostitution enterprise, he rented the organization locations for brothels, and assisted in the construction and set up of new locations.

**THE DEBTOR'S BANKRUPTCY FILING**

14.     On January 3, 2019 (the "Petition Date"), the Debtor filed a petition (the "Petition") for Chapter 11 bankruptcy relief before this Court under Case No. 1:19-40026-nhl, which was executed by Schwartz, as Managing Member of the Debtor.

**THE PETITION, SCHEDULES, AND OTHER POST-FILING EVENTS**

15.     In its Petition and Schedules, the Debtor identifies three (3) Secured Creditors.

Gloria Malcom with an estimated claim of $852,118.41, Orlaine Edwards with an estimated claim of $50,000.00 and Signature Bank (Secured Creditor's assignor) with an estimated claim of $3,641,564.78. The Debtor's schedules further provide that other than the Debtor has thirteen unsecured claims which total $89,692.59, the largest general unsecured claims in the amount of $75,869.54 (to Millennium Elevator).  To date, other than the Secured Creditor, no creditors have filed proofs of claims in this matter other than Consolidated Edison ("ConEd") ($194.41 – general unsecured), and the Internal Revenue Service ("IRS") ($6,702.04 – general unsecured), Gloria Malcom ($852,118.41 – secured), Capital One Bank (USA), N.A. by American InfoSource ($200.50 – general unsecured); New York State Department of Finance ($21,566.54 – priority), and NYC Water Board ($38,182.71 - Secured). Orlaine Edwards has also filed a Proof of Claim ($34,271.44 – secured), albeit incorrectly on the docket and not the claims register.

16.     On January 30, 2019, The Yitzhak Law Group, Esq. ("Debtor's Counsel") filed an application to become retained as counsel to the Debtor (the "Retention Application"). On June February 20, 2019, Debtor's counsel amended the Retention Application and upon Supplemental Affirmation to her Retention Application to disclose that she received a pre-petition retainer from a party other than the Debtor, which was applied in part and held in part prior to the Petition Date.

17.     As of the date hereof, the Debtor has only filed monthly operating reports ("MOR") for the months of January 2019 and February 2019. No MOR has yet been filed for the months of March, April , and May 2019.  The MOR's suggest that the Debtor has been generating nominal revenues and appears to be operating at a net loss each month.

18.     On June 17, 2019, this Court signed an order [ECF No. 39] authorizing retention of Goldberg, Weprin, Finkel Goldstein LLP as substitute attorneys for Debtor.

**BAR DATE**

19.    On April 15, 2019, the Bankruptcy Court entered an Order (the "Bar Date Order")

[ECF No. 32] fixing July 2, 2019 as the last date for filing any and all claims (including

governmental claims) in this matter (the "Bar Date").

**THE EXPIRATION OF THE EXCLUSIVE PERIOD**

20.    The Debtor's exclusive right to file a plan of reorganization in this Case expired on

May 3, 2019 and no application to extend such time period has been filed by the Debtor prior

thereto.

21.    On July 8, 2019, the Secured Creditor filed its Plan and Disclosure Statement

[ECF Nos. 40 & 41].

## RELIEF REQUESTED

22.    The Plan Proponent respectfully requests entry of the proposed order (the

"Disclosure Statement Order"), substantially in the form annexed hereto as **Exhibit A**, granting

the following relief and such other relief as is just and proper:

  a.    Disclosure Statement:    approving the Disclosure Statement as containing "adequate
        information" under § 1125 of the Bankruptcy Code;

  b.    Confirmation Hearing: establishing the date of the Confirmation Hearing;

23.    As noted above, on July 8, 2019, the Plan Proponent filed the Plan and Disclosure

Statement. In accordance with § 1126 of the Bankruptcy Code, the Plan classifies holders of

claims into certain classes for all purposes, including with respect to voting to accept or reject the

Plan, as follows:

| SUMMARY AND STATUS OF VOTING RIGHTS | | | |
|---|---|---|---|
| Class | Class Description | Status | Voting Rights |
| 1 | Priority/Admin Claims | Unimpaired | Presumed to Accept |

| 2 | Secured Creditor's Secured Claim | Unimpaired | Plan Proponent |
|---|---|---|---|
| 3 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 4 | General Unsecured Claims | Unimpaired | Presumed to Accept |
| 5 | Equity Interests | Unimpaired | Presumed to Accept |

24.     Based on the foregoing, the Plan Proponent will not solicit votes from holders of claims in Classes 1-5 as such claims are unimpaired and/or are deemed to have accepted the Plan, as discussed more fully below.

**BASIS FOR RELIEF**

Approval of Disclosure Statement

25.     The Disclosure Statement should be approved in accordance with the provisions of § 1125 of the Bankruptcy Code. Under § 1125(b) of the Bankruptcy Code, prior to soliciting acceptances with respect to a chapter 11 plan, a proponent must provide holders of claims against the debtor with the proposed plan and a written disclosure statement which has been approved by the Bankruptcy Court as containing "adequate information". Specifically, § 1125(b) of the Bankruptcy Code provides, in pertinent part, that:

> [a]n acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information . . . .

11 U.S.C. § 1125(b).  Section 1125(a) of the Bankruptcy Code  further defines adequate information to mean:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records,

> including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan. . .

22  U.S.C. § 1125(a).

26.     Thus, a disclosure statement must, as a whole, provide such information as is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders entitled to vote on the plan. *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994); *see also In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 600 (Bankr. S.D.N.Y. 2006) (noting that "an adequate disclosure determination requires a bankruptcy court to find not just that there is enough information, but also what is said is not misleading").

27.     Section 1125 of the Bankruptcy Code further provides "in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information..." 11 U.S.C. § 1125(a)(1). To that end, courts are granted broad discretion when reviewing the adequacy of the information contained in a disclosure statement. *See In re Ionosphere Clubs*, Inc., 179 B.R. 24, 29 (Bankr. S.D.N.Y. 1995); *In re A.H. Robins Co., Inc.*, 880 F.2d 694, 696 (4th Cir. 1989); *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988); *Kirk v. Texaco, Inc.*, 82 B.R. 678, 682 (Bankr. S.D.N.Y. 1988) (noting that "[t]he legislative history could hardly be more clear in granting broad discretion to bankruptcy judges under § 1125(a)"). This grant of discretion was intended to accommodate the broad range of circumstances that accompany chapter 11 cases. *See* H.R. Rep. No. 595-95, 1st Sess. 408-09 (1977).

28.     Accordingly, the determination of whether a disclosure statement contains adequate information is to be made on a case-by-case basis, focusing on the unique facts and circumstances

of each case. *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001); *In re Dakota Rail, Inc.*, 104 B.R. 138, 143 (Bankr. D. Minn. 1989) (holding that the bankruptcy court has "wide discretion to determine on a case by case basis whether a disclosure statement contains adequate information, without burdensome, unnecessary and cumbersome detail").

29.     The Plan Proponent respectfully submits that the proposed Disclosure Statement contains "adequate information" with respect to the Plan within the meaning of § 1125(a) of the Bankruptcy Code and provides holders of impaired claims that are entitled to vote to accept or reject the Plan with sufficient information to make an informed judgment regarding the Plan. Among other things, the Disclosure Statement includes:

a) a summary of the Plan, including classification and treatment of Claims against the Debtor;
b) general information regarding the Debtor, including an overview of the sale of the Debtor's assets;
c) certain events leading to the filing of this Chapter 11 Case;
d) the relief requested and events occurring during the course of this Chapter 11 Case to date;
e) a description of the means of implementation, including, without limitation, a detailed background and description of the proposed post- confirmation sales;
f) potential risk factors affecting the Plan.

30.     Accordingly, the Plan Proponent seeks this Court's approval of the Disclosure Statement as containing adequate information required by § 1125 of the Bankruptcy Code. The Plan Proponent also requests that pursuant to § 1125(b) of the Bankruptcy Code, the Plan Proponent be authorized to transmit copies of the Disclosure Statement (together with all exhibits, including the Plan, and related documents), as approved, in the manner and upon such persons as set forth below.

 **Procedures for Solicitation**

31.     Pursuant to Bankruptcy Rule 3017(d), the following materials are required to be distributed to creditors upon the approval of a disclosure statement.

    a.  the plan, or court-approved summary of the plan;

    b.  the disclosure statement approved by the Bankruptcy Court;

    c.  notice of the time within which acceptances and rejections of such plan may be filed; and

    d.  any other information as the Bankruptcy Court may direct, including any court opinion on approving the disclosure statement or a court-approved summary of the opinion.

32.      Bankruptcy Rule 3017 and Local Rule 3017-1 also require that notice of the time fixed for filing objections and the hearing on confirmation be mailed to all creditors in accordance with Rule 2002(b), and that a form of ballot (conforming to the appropriate Official Form) be mailed to creditors who are entitled to vote on the Plan.

33.      However, pursuant to § 1126(f) of the Bankruptcy Code, classes of creditors that are not impaired under the Plan are "conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class…is not required." 11 U.S.C. § 1126(f). Accordingly, the Plan Proponent respectfully submits that the transmittal of a Solicitation Package to the holders of unimpaired claims (which are all classes of claims in this case) who are not entitled to vote and are deemed to have accepted the Plan, is not necessary. Specifically, the Plan Proponent proposes it is not required to provide the following categories and classes of claims with a Solicitation package: Administrative Claims, claims for professional fees, Classes 1-5 (collectively, the "Non-Voting Parties"). The Plan Proponent proposes instead, that the Non-Voting Parties receive a notice (the "Confirmation Hearing Notice"), substantially in the form attached hereto as **Exhibit B**, of: (i) the approval of the Disclosure Statement, (ii) a copy of the Disclosure Statement Order, as approved by the Bankruptcy Court, the Disclosure Statement, and the Plan, all as may be amended or supplemented, (iii) contact information for parties wishing to request a hard copy of such documents from the Plan Proponent; (iv) the date of the Confirmation Hearing, (v) the deadline and procedures for filing objections to confirmation of the Plan.

34.      The Plan Proponent believes that transmittal and mailing of the Confirmation

Hearing Notice, as applicable, provides adequate notice to creditors and complies with all applicable Bankruptcy Rules.

35.    The Plan Proponent anticipates that some of the Confirmation Hearing Notices will be returned as undeliverable by the United States Postal Service. To the extent any Confirmation Hearing Notices are returned as undeliverable, the Plan Proponent also seeks the Bankruptcy Court's approval for a departure from the strict notice rule, and request that they be excused from re-mailing or otherwise re-sending Confirmation Hearing Notices to entities whose mail is returned as "undeliverable" at such addresses or "moved - no forwarding address" or similar marking, unless the Plan Proponent is provided with, or obtains, accurate addresses for such entities by the date that is no less than two weeks before the date of the Confirmation Hearing.

**Confirmation Hearing Date**

36.    Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation." Fed. R. Bankr. P. 3017(c).

37.    In addition, Bankruptcy Rule 2002(b) requires at least twenty-eight (28) days' notice by mail to be given to all creditors of the time fixed for filing objections to, and the hearing to consider, confirmation of a plan. In accordance with Bankruptcy Rules 2002(b) and 3017(c), the Plan Proponent requests that the Confirmation Hearing be scheduled for on or about Septemner 30, 2019. The proposed date of the Confirmation Hearing will enable the Plan Proponent to pursue confirmation of the Plan in accordance with all applicable Bankruptcy Rules.

38.    In accordance with the Bankruptcy Rules, the Plan Proponent proposes to provide within the Confirmation Hearing Notice information regarding (i) the time fixed for filing objections to confirmation of the Plan, (ii) certain disclosures regarding the releases, injunctions, and exculpation provided for in the Plan and (iii) the time, date, and place for the Confirmation

Hearing.

39.     The Plan Proponent also requests that the Bankruptcy Court order that the Confirmation Hearing may be continued from time to time by announcing such continuance in open court or by filing a notice of adjournment, and that the Plan may be modified pursuant to § 1127 of the Bankruptcy Code prior to, during, or as a result of the Confirmation Hearing, in each case, without further notice to parties in interest; provided, however, that any such modification does not  materially  and  adversely affect any class of claims under the Plan.

**Objections to Confirmation**

40.     Under Bankruptcy Rules 2002(b) and (d), all creditors and indenture trustees must be given not less than twenty-eight (28) days' notice of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan. Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1).

41.     The Plan Proponent requests that the Bankruptcy Court fix the last date for filing and serving objections to confirmation of the Plan as seven (7) days before the Confirmation Hearing (the "Objection Deadline").  Setting the Objection Deadline at seven (7) days before the Confirmation Hearing will provide parties in interest with sufficient time to consider whether to interpose any objections to the Plan, while providing the Bankruptcy Court, the Plan Proponent and all parties in interest with sufficient time to consider and, if necessary, respond to any objections before the Confirmation Hearing. To the extent objections to confirmation are filed, the Plan Proponent requests it, and other parties in interest, be authorized to file and serve a reply to any such objections no later than the day prior to the Confirmation Hearing.

42.     In addition, the proposed Confirmation Hearing Notice provides, and the Plan Proponent requests that the Bankruptcy Court direct, any objections or responses to the proposed

confirmation of the Plan to: (i) be in writing; (ii) state the name, address, and nature of the claim of the objecting or responding party; (iii) state with particularity the basis and nature of any objection or response and, if practicable, a proposed modification to the Plan that would resolve such objection; (iv) conform to the Bankruptcy Rules and the Local Rules; and (v) be filed electronically no later than the Objection Deadline with the Clerk of the United States Bankruptcy Court for the Eastern District of New York, with a courtesy copy delivered to Judge Lord's Chambers and served so that objections and responses are actually received on or before the Objection Deadline by: (a) counsel for the Debtor, (b) counsel for the Plan Proponent; (c) counsel for the Committee (if one is appointed), and (d) Office of the United States Trustee (collectively, the "Notice Parties").

43.    The Plan Proponent submits that the foregoing procedures will provide adequate notice of the Confirmation Hearing and, accordingly, requests that the Bankruptcy Court approve these procedures for filing objections to the Plan and any responses thereto.

**Voting on the Plan and Related Matters**

44.    The Plan Proponent requests that the Bankruptcy Court not require balloting, fix a voting deadline, set vote tabulation procedures as all classes of claims that are unimpaired under the Plan and as such are conclusively presumed to have accepted the Plan.

**Non-Substantive Changes**

45.    The Plan Proponent seeks authorization from the Bankruptcy Court to make non-substantive changes to the Disclosure Statement, the Plan, and related documents without further order of the Bankruptcy Court, including without limitation changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Confirmation Hearing Notice prior to their mailing.

## Authorization for Sale of Property

46.     By this Motion, the Plan Proponent seeks authorization to, *inter alia*, proceed with a public auction sale of the Premises in accordance with section 363 of the Bankruptcy Code

47.     As reflected in the Plan and Disclosure Statement, the Plan Proponent has consented to the 363 Sale of the Property.  The Plan Proponent shall credit bid for the Premises in the amount of $7,726,206.09, its estimated secured claim as of the anticipated September 30, 2019 Effective Date which claim may be adjusted to include any and all post-petition charges, penalties, attorney's fees, accrued interest, protective advances and all other sums that the Plan Proponent is entitled to pursuant to the Note and Mortgage incurred after the Petition Date.

48.     The Plan Proponent intends to engage Richard Maltz of Maltz Auctions, to market and sell the Property (the "Sale") in order to obtain its highest and best price, in accordance with applicable provisions of the Bankruptcy Code.

49.     In the event that the Plan Proponent is the winning bidder at the Sale, the Plan Proponent, or its nominee, shall take title to the Property free and clear of all liens, claims and encumbrances pursuant to §§ 363(f) and 1123(a)(5) of the Bankruptcy Code, except that its election ownership shall be subject to the Mortgage.  In addition, although the Plan Proponent shall be permitted to bid in the amount of its credit, it will have no obligation to do so

50.     In the event that the Plan Proponent is not the winning bidder at the Sale, and the overbid exceeds the amount of Allowed Claims of all creditors (except those of insiders of the Debtor and/or equity), then all creditors holding Allowed Claims shall receive 100% distribution from Sale Proceeds.  In the event, the Plan Proponent is not the winning bidder at the Sale, and the winning bid consists of an amount which exceeds the full amount of the Plan Proponent's Secured Claim but is less than the amount necessary to pay all Allowed Claims, the Plan Proponent will

reduce its entitlement to share in Sale Proceeds by the amount necessary to pay all Allowed Claims of subordinate creditors (except those of insiders of the Debtor and/or equity) in full provided that the Plan Proponent's Secured Claim is not modified and/or adjusted.

51.     In the event that the Plan Proponent is the winning bidder at the Sale, and the Plan Proponent's winning bid does not exceed the Plan Proponent's Secured Claim (as filed, and without adjustment), the Plan Proponent, or its nominee, shall take title to the Property free and clear of all liens, claims and encumbrances, and all creditors holding Allowed Claims (other than those of insiders of the Debtor and/or equity) shall receive a 100% distribution on account of their Allowed Claim from Cash to be supplied by the Plan Proponent which shall be paid as soon as practicable after the Effective Date (the "Cash Contribution"). The Cash Contribution shall be utilized to pay a distribution to holders of Allowed Claims and holders of Administrative Claims, fees due to the Office of the UST and Professional Fees in full.

52.     If the Plan Proponent's credit bid exceeds the amount of the Plan Proponent's Secured Claim, the Plan Proponent shall provide proof of additional cash deposit to the Disbursing Agent as needed to close over its credit bid.

53.     It is respectfully submitted as further stated in the Disclosure Statement and Plan, the sale of the Property is in the best interest of the Estate and should be approved as

54.     Based on the foregoing the Plan Proponent specifically requests: (a) entry of the Sale Procedures Order (**Exhibit C** hereto): i) scheduling the time, date and place for 363 Sale; (ii) approving the Bidding Procedures (**Exhibit D** hereto); (iii) approving the Notice of Sale (**Exhibit E** hereto); and (iv) scheduling a hearing to confirm the results of the 363 Sale; and (b) entry of the Sale Approval Order (in a form to be submitted following the 363 Sale): (i) authorizing and approving the sale of the Property, free and clear of any and all interests in the Property including,

but not limited to, any and all liens, claims and encumbrances.

**The 363 Sale Should Be Scheduled**

55.     It is in the best interests of the Debtor's estate and all of its creditors for the Property to be sold. The Plan Proponent has consulted with her professionals and determined in its reasonable business judgment that it is both necessary and appropriate to proceed with the 363 Sale at this time. The Plan Proponent proposes to conduct the on a date which will provide ample time to market the 363 Sale and the Property.

**The Bidding Procedures Should Be Approved**

56.     The proposed Bidding Procedures for the Property are annexed as **Exhibit D**.

57.     The key provisions of the proposed Bidding Procedures of the Property are as follows: (a) to register to bid, prospective bidders must present a good faith deposit in the amount of $10,000.00 of the potential bid in accordance with the bidding instructions_____; (b) the Plan Proponent shall credit bid for the Property in the amount of $7,726,206.09 and the initial overbid must be at least $908,571.49; (c) the successful bidder must close title on or before 30 days following the Sale, time being of the essence as to the successful bidder; (d) the successful bidder must pay all county, state or other property transfer taxes in connection with the 363 Sale and transfer of the Property; (e) the Property is being sold "as is," "where is," "with all faults," and without any representations or warranties of any kind; and (f) the Property is being sold free and clear of any and all Interests and subject to: (i) any and all leases, tenancies or occupancy rights; (ii) any state of facts that an accurate survey may show; (iii) any state of facts a physical inspection may show; (iv) any covenants, restrictions and easements of record; (v) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (vi) environmental conditions.

58.     The Plan Proponent submits that the proposed Terms and Conditions of Sale are reasonably designed to ensure that the Debtor's estate receives the maximum benefit from the sale of the Property and therefore warrant Court approval.

### The Notice of Sale Should Be Approved

59.     Pursuant to Bankruptcy Rules 2002(c) and 6004(a), it is required to give twenty-one (21) days' notice of any proposed sale of property not in the ordinary course of business to the debtor and all creditors. Fed. R. Bankr. P. 2002 & 6004. Bankruptcy Rule 2002(c) provides that such notice must include the time and place of any auction, a sale hearing, and the time fixed for objections to the sale. Fed. R. Bankr. P. 2002.

60.     Here, the Plan Proponent is serving the Notice of Sale substantially in the form annexed as **Exhibit E** in accordance with Bankruptcy Rule 2002(c) at least twenty-one (21) days prior to the 363 Sale.

61.     As reflected in the Notice of Sale, it includes: (a) the date, time and location of the 363 Sale; (b) the Terms and Conditions of the 363 Sale; and (c) a reasonably specific description of the Property. Notice of the 363 Sale will also be published in appropriate publications in advance of the 363 Sale.

62.     The Plan Proponent submits that the Notice of Sale as proposed substantially complies with Bankruptcy Rule 2002 and the Administrative Order 557 and constitutes good and adequate notice of the 363 Sale. Therefore, the Plan Proponent respectfully requests that the Court approve the proposed Notice of Sale.

### E.     The Sale Approval Hearing

63.     The Plan Proponent proposes that, following the 363 Sale, an affirmation to confirm the results of the sale will be submitted to the Court along with the proposed Sale Approval Order

authorizing and approving, *inter alia*, the Plan Proponent's sale of the Property to the successful bidder from the 363 Sale.

64.    The Plan Proponent proposes that the Sale Approval Hearing be conducted following the auction at 10:00 a.m.

## II.    **The Sale Approval Order Should Be Entered**

65.    By this Motion, the Plan Proponent also seeks entry of the Sale Approval Order following the hearing to confirm the results of the 363 Sale. As set forth above, the Plan Proponent intends to submit an affirmation confirming the results of the 363 Sale and the proposed Sale Approval Order prior to the Sale Approval Hearing.

### A.    **The Sale Of The Property Represents A Reasonable Exercise Of Business Judgment And Should Be Approved**

66.    Administrative Order 557 supplements the requirements of section 363 of the Bankruptcy Code, Bankruptcy Rule 6004, and provides, in pertinent part, that:

> "When an auction is contemplated, … should file a single motion seeking the entry of two orders to be considered at two separate hearings. The first order . . . will approve procedures for the sale process, including any protections for an initial bidder, or stalking horse buyer, and the second order . . . will approve the sale to the successful bidder at the auction."

67.    In addition, section 105(a) of the Bankruptcy Code grants the Court the authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

68.    Here, as further stated in the Plan and Disclosure Statement, the Plan Proponent used is sound business judgment to determine that selling the Property outside the ordinary course of business pursuant to the Stipulation at the 363 Sale is justified, necessary and appropriate. Indeed, compelling business justifications exist to authorize the 363 Sale as set forth herein.

69.    Based upon the foregoing, it is submitted that the proposed sale of the Property represents a reasonable exercise of the Plan Proponent's business judgment and should be approved.

**B.    The Property Should Be Sold Free And Clear Of Any And All Interests Pursuant to Section 363(f) of the Bankruptcy Code**

70.    Section 363 of the Bankruptcy Code permits a Debtor-in-possession to sell property free and clear of <u>any</u> interest in such property if: (a) applicable state law will permit the sale; (b) such entity consents; (c) the price at which the assets is being sold exceeds the aggregate value of all liens on such property; (d) the interest is in *bona fide* dispute; or (e) the entity with an interest in the asset being sold could be compelled in a legal or equitable proceeding to accept a money satisfaction of its interest in and to the property. <u>See</u> 11 U.S.C. § 363(f).

71.    Here, as reflected in the Plan and Disclosure Statement, the Plan Proponent has consented to the sale of the Property and agreed to pay all creditors in full on their allowed claims.

72.    Furthermore, all known holders of an interest in the Property will be provided notice of this Motion and the proposed 363 Sale of the Property. Thus, all known holders of an interest in the Property will have an opportunity to oppose the 363 Sale contemplated herein.

73.    Based on the foregoing, the requirements of section 363(f) of the Bankruptcy Code are satisfied, and the Property may be sold free and clear of any and all Interests.

**C.    The Successful Bidder Should Be Afforded Protection Under Section 363(m) Of The Bankruptcy Code**

74.    Section 363(m) of the Bankruptcy Code affords protection to a good faith purchaser in any interest in property purchased from an estate, whether the sale conducted is later reversed or modified on appeal. Specifically, section 363(m) provides as follows:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). See Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888 (Bankr. S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal."); In re Stein & Day, Inc., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

75.    The Second Circuit Court of Appeals has held that a party would have to show fraud or collusion between a buyer and the debtor-in-possession or trustee in order to demonstrate a lack of good faith. See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs.  (In re Colony Hill Assocs.), 111 F. 3d 269, 276 (2d Cir. 1997) (citations omitted) ("[t]ypically the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the Trustee, or an attempt to take grossly unfair advantage of other bidders."). See also In re Bakalis, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

76.    Here, the Plan Proponent intends to conduct the Sale of the Property. The Plan Proponent anticipates that, following the Sale, it will seek to confirm the sale to the highest or best bidder. The Plan Proponent anticipates that such bidder for the Property will be acting in good faith since the 363 Sale will be conducted at arm's-length with an opportunity for competitive bidding.

77.    Accordingly, the Sale Approval Order will afford the successful bidder at the 363 Sale the protections available under section 363(m) of the Bankruptcy Code.

78.     Pursuant to Administrative Order 557, the Plan Proponent is required to highlight any "extraordinary provisions" in a separate section of a motion seeking to sell estate assets. The Plan Proponent submits that there are no "extraordinary provisions" with respect to the proposed 363 Sale that have not otherwise been highlighted herein.

**NOTICE**

79.     Notice of this Motion has been given to (i) counsel to the Debtor, (ii) the United States Trustee; (iii) all creditors; and (iv) all parties who have filed a notice of appearance in this case pursuant to Bankruptcy Rule 2002. The Plan Proponent submits that no other or further notice need be provided, except to the extent sought in this Motion and approved by the Bankruptcy Court.

**NO PRIOR REQUEST**

80.     No previous application for the relief sought herein has been made by the Plan Proponent to this or any other court.

**WHEREFORE,** the Plan Proponent respectfully requests that the Bankruptcy Court approve this Motion in its entirety and grant such other and further relief as is just and proper.

Dated: New York, New York
         August 6, 2019

                              KRISS & FEUERSTEIN LLP

                              By:     *s/ Jerold C. Feuerstein*
                                      Jerold C. Feuerstein, Esq.
                                      Stuart L. Kossar, Esq.
                                      360 Lexington Avenue, 12th Floor
                                      New York, New York 10017
                                      (212) 661-2900

                              *Attorneys for 1234 Pacific Street Lender LLC*