**KRISS & FEUERSTEIN LLP**
Jerold C. Feuerstein, Esq.
Stuart L. Kossar, Esq.
360 Lexington Avenue, Suite 1200
New York, NY 10017
(212) 661-2900
(212) 661-9397 – facsimile
jfeuerstein@kandfllp.com
skossar@kandfllp.com

*Attorneys for 1234 Pacific Street Lender LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                              Chapter 11

1234 Pacific Management LLC,                        Case No. 1:19-40026-nhl

                                Debtor.       Hon. Nancy Hershey Lord
-------------------------------------------------------------X

**OBJECTION OF 1234 PACIFIC STREET LENDER LLC TO DEBTOR'S MOTION
FOR ENTRY OF AN ORDER DISALLOWING DEFAULT INEREST**

TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE:

      1234 Pacific Street Lender LLC (the "Secured Creditor"), as a secured creditor and mortgagee of the Debtor, 1234 Pacific Management LLC (the "Debtor"), by and through its attorneys, Kriss & Feuerstein LLP, respectfully submits this Objection (the "Objection") to the Debtor's Motion for an entry of an order to disallow the default interest claimed by the Secured Creditor filed on September 9, 2019 [ECF No. 49] (the "Motion") and respectfully submits as follows:

**PRELMINARY STATEMENT**

      1.     On June 28, 2019, the Secured Creditor filed its Proof of Claim (Claim No. 7-1), asserting, *inter alia*, that as of January 3, 2019, the Debtor owes the Secured Creditor

$7,120,4641.70 (the "Secured Creditor's Claim"). The Debtor's Motion (while not disputing the mathematical computations in Secured Creditor's Claim) incorrectly claims the Secured Creditor lacks a legal basis to impose default interest in the sum of $4,469,333.33.

2. First, contrary to the Debtor's assertions, the Debtor defaulted under the terms of the Loan Documents (as further defined herein) by: (i) making material misrepresentations as to who its equity interest holders were to induce the Secured Creditor's assignor, Signature Bank ("Signature") to provide the Debtor with the subject loan and (ii) due to the entry of two (2) judgments encumbering the real property commonly known as 1232-1234 Pacific Street, Brooklyn, New York 11218 (Block 1206, Lot 28) (the "Property").

3. Second, pursuant to the terms of the Loan Documents, there is no requirement for the Secured Creditor to provide a notice to the Debtor regarding the above-mentioned defaults.

4. Third, the default interest rate of 24% does not constitute a penalty but rather reflects the terms of a commercial loan negotiated by the Debtor and Secured Creditor.

5. Accordingly, the Secured Creditor respectfully requests that the Debtor's Motion be denied in its entirety.

## BACKGROUND

**Secured Creditor's Loan**

6. On or about June 2, 2014, Signature made a commercial loan to the Debtor in the original principal sum of $4,000,000.00 (the "Loan"). The Loan was evidenced by a Restated Note (the "Note") dated June 2, 2014, which was executed by the Debtor, through Mendy Lowy ("Lowy") as Manager of the Debtor. A copy of the Note is annexed hereto as **Exhibit "A"**.

7. To secure repayment of the indebtedness evidenced by the Note, on or about June 2, 2014, the Debtor further executed and delivered to Signature a First Mortgage, Consolidation,

Extension, Modification and Security Agreement (the "Mortgage"), which encumbered the Property in the principal sum of $4,000,000.00. The duly executed Mortgage was recorded with the Office of the City Register of the City of New York, Kings County (the "City Register") on June 12, 2014 under CRFN: 2014000201863. A copy of the Mortgage is annexed hereto as **Exhibit "B"**.

8.      As further security for the Note, on or about June 2, 2014, Lowy executed and delivered to Signature a Guaranty of Recourse Obligations (the "Guaranty") guaranteeing all obligations under the Loan. A copy of the Guaranty is annexed hereto as **Exhibit "C"**.

9.      On or about January 15, 2019, the Note, Mortgage, Guaranty, and all other documents evidencing the Loan (the "Loan Documents") were assigned by Signature to the Secured Creditor pursuant to that certain Assignment of Mortgage (the "Assignment"), which was recorded with the City Register on February 21, 2019 under CRFN: 2019000059240. A copy of the Assignment is annexed hereto as **Exhibit "D"**.

**The Debtor's Default**

10.     The Debtor defaulted pursuant Section 2.01(b) of the Mortgage, which states there is an Event of Default: "if any warranty, misrepresentation or certification, made by Mortgagor or Guarantor herein or in connection with the Loan shall be materially false at the time it was made…" (*See* **Ex B,** § 2.01(b)). Here, the Debtor defaulted by making material misrepresentations as to who its equity interest holders were at the time of loan origination, in order to induce Signature to provide the Debtor with the subject mortgage Loan (the "Misrepresentation Default"). The Misrepresentation Default was confirmed at the Debtor's § 341 Meeting of Creditors (the "341 Meeting") whereby the Debtor's operating agreement provided to Signature at the time of origination contained terms that were substantially different than the operating agreement provided

at the 341 Meeting constituting a default under the Loan Documents. Copies of these operating agreements (the "Operating Agreements") are collectively annexed hereto as **Exhibit "E"**.

11. The Debtor also default under the terms of the Mortgage pursuant to Section 2.01(j), which section expressly prohibits the Debtor from transferring or agreeing to transfer, in any matter, all or any portion of the Property, or any interest therein, or any interest in the Mortgagor. Notwithstanding the fact that the Debtor (at Section 26 of the Objection) would gloss over the fact that it willfully, and impermissibly, transferred an interest in the Debtor (the "Due on Sale Default") to Mr. Schwartz after the Loan was made, such conduct was expressly prohibited by the Mortgage.

12. The Debtor also defaulted under the terms of the Mortgage pursuant to Section 2.01(n) of the Mortgage, which states: "if any judgment for $50,000.00 or more shall be rendered against Mortgagor or any Guarantor which shall not be discharged or bonded pending appeal within thirty (30) days from and after the date of entry thereof…" (the "Judgment Default", and together with the Misrepresentation Default, collectively the "Defaults"). Here, there are two (2) separate judgments entered against the Debtor: (i) Judgment in favor of Orlaine Edwards entered in Kings County Supreme Court against Debtor for $50,000.00 docketed March 6, 2017 under Control Number 003599191-01 (the "Edwards Judgment") and (ii) Judgment in favor of Gloria Malcolm entered in Kings County Supreme Court against Debtor for $830,015.00 docketed January 17, 2018 under CRFN Number 003709488-01 (the "Malcolm Judgment", and together with the Edwards Judgment, collectively, the "Judgments").

**The Bankruptcy Filing**

13. On January 3, 2019 (the "Petition Date"), the Debtor filed a petition (the "Petition") for Chapter 11 bankruptcy relief before this Court under Case No. 1:19-40026-nhl, which was

executed by Issac Schwartz,[1] as Managing Member of the Debtor.

14.     To date, other than the Secured Creditor, no creditors have filed proofs of claim in this matter other than:

    a) Consolidated Edison ($194.41 – general unsecured);

    b) The Internal Revenue Service ($6,702.04 – general unsecured);

    c) Gloria Malcolm ($852,118.41 – secured);

    d) Capital One Bank (USA), N.A. by American InfoSource ($200.50 – general unsecured);

    e) New York State Department of Finance ($21,566.54 – priority);

    f) NYC Water Board ($38,182.71 - secured); and

    g) Orlaine Edwards has also filed a Proof of Claim ($34,271.44 – secured).[2]

15.     On April 15, 2019, the Bankruptcy Court entered an Order (the "Bar Date Order") fixing July 2, 2019 as the last date for filing any and all claims (including governmental claims) in this matter [ECF No. 32].

16.     The Debtor's exclusive right to file a plan of reorganization in this Case expired on May 3, 2019 and no application to extend such time period has been filed by the Debtor.

17.     On June 28, 2019, the Secured Creditor filed its Proof of Claim (Claim No. 7-1).

---

[1] On or about September 14, 2018, Schwartz was arrested and later indicted by the Queens County District Attorney in the criminal action presently pending in New York State Supreme Court, County of Queens, styled *The People of the State of New York v. Ludwig Paz, et al* (Indictment No. 1690-2018) (the "Indictment"). Upon information and belief, the Indictment alleges that Schwartz violated Public Law 460.20-1A Enterprise Corruption, Public Law 105.05-1, Conspiracy in the Fifth Degree, by renting the organization locations for brothels out of real property he either directly or indirectly owned, and assisting in the construction and set up of new locations. Upon information and belief, Schwartz and Lowy are partners in at least forty-one (41) unrelated parcels of multifamily real property in Brooklyn.

[2] Orlaine Edwards's Claim is incorrectly filed on the docket instead of the Claims Register.


18. On July 8, 2019, the Secured Creditor filed its Plan and Disclosure Statement which seeks to auction the Premises pursuant to 11 U.S.C. § 363 and pay all Allowed Claims (as defined in the Plan and Disclosure Statement) in full [ECF Nos. 40 & 41].

19. On August 6, 2019, the Secured Creditor filed a motion to approve its Disclosure Statement, which is presently returnable on November 5, 2019 [ECF No. 46].

20. On September 9, 2019, the Debtor filed its Motion [ECF No. 49].

21. On October 4, 2019, the Secured Creditor filed a motion referring the parties to mediation, which is presently returnable on November 5, 2019 [ECF Nos. 54 & 55].

## **OBJECTION**

### I. Secured Creditor's Claim is Prima Facie Valid

22. As this Court noted recently in *In Re GEK Realty & Home Improvement LLC*:

> "A properly filed proof of claim is prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f); *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696 (5th Cir. 1988); *In re Wells*, 51 B.R. 563 (D. Colo. 1985); *In re Nantucket Aircraft Maint. Co*., 54 B.R. 86 (Bankr. D. Mass. 1985) (citations omitted). In order for a claim to be prima facie valid, it must comply with the rules, including Rule 3001, and set forth the facts necessary to support the claim. *See, e.g., In re Stoecker*, 143 B.R. 879, 883 (N.D. Ill. 1992), aff'd in part, vacated in part, 5 F.3d 1022 (7th Cir. 1993); *In re Cluff*, 313 B.R. 323, 332 (Bankr. D. Utah 2004*); In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988); *In re Svendsen*, 34 B.R. 341 (Bankr. D.R.I. 1983) (citations omitted).

*See, In re GEK Realty & Home Improvement LLC*, No. 17-40228-nhl, 2019 Bankr. LEXIS 3147 (Bankr. E.D.N.Y. Oct. 3, 2019).

23. In addition, this Court has noted the that the burden is initially upon on the objectant:

> The party objecting to the claim has the burden of going forward and introducing evidence sufficient to rebut the presumption of validity. *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 15 (2000) ("[Rule 3001(f)] does not address the burden of proof" in an objection to claim proceeding and is, instead, an evidentiary presumption subject to rebuttal); *see Litton Loan Servicing, LP v. Garvida (In re*

*Garvida),* 347 B.R. 697, 706–07 (B.A.P. 9th Cir. 2006); *In re Hilliard*, 68 C.B.C.2d 884, 2012 Bankr. LEXIS 4466 (Bankr. D. Mont. Sept. 26, 2012); *In re Cluff*, 11 313 B.R. at 337. Such evidence must be sufficient to demonstrate a true dispute and must have probative force equal to the contents of the claim. *In re Wells*, 51 B.R. at 563; *In re Unimet Corp.*, 74 B.R. 156 (Bankr. N.D. Ohio 1987).

*See, In re GEK Realty & Home Improvement LLC*.

24.     However, once the objecting party introduces sufficient evidence, the burden of proof shifts to the claimant to prove the validity of its claim by a preponderance of the evidence. *In re Koloch*, 416 B.R. 375, 378 (Bankr. E.D.N.Y. 2009), citing, *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635 (3d Cir.1991)

25.     Here, the Secured Creditor's Claim is prima facie valid. As further stated below, the Secured Creditor holds an enforceable Note and Mortgage, both of which were duly executed and delivered by the Debtor. As such, the Debtor is bound by the terms of the Loan Documents, including but not limited to, the imposition of default interest.

## II.     Debtor Defaulted Under the Loan Documents Based on the Judgment Default and Misrepresentation Default.

26.     Notably, the Debtor does not deny the Judgment Default under the Loan. As such, the Judgment Default should be deemed admitted.

27.     However, contrary to the Debtor's assertions, the Debtor also defaulted under the terms of the Loan Documents by making material misrepresentations as to who its equity interest holders were to induce Signature to provide the Debtor with the subject mortgage Loan. Here, Debtor's operating agreement provided to Signature at the time of origination contains terms that were substantially different than the operating agreement provided at the § 341 Meeting of Creditors constituting a default under the Loan. It is undisputed that the operating agreements are substantially different (*See* **Ex E**).

28.     To dispute this default, Debtor claims without any supporting affidavit or

7

documentation that "it appears, however, that the Debtor's operating agreement was superseded in connection with the Loan with Signature Bank and Mr. Lowy was designated as the sole member/manager for purposes of the closing and Mr. Schwartz later returned to being a partner and signed Debtor's Chapter 11 Petition in this capacity." (*See* Motion, ¶¶ 25 & 26). This Court should reject the Debtor's unsupported assertion.

### III.    Notice of the Defaults is not Required Under the Loan Documents.

29. The Debtor incorrectly claims that a default notice and cure period is required. As the Debtor acknowledges, pursuant to Section 2.01, there are specific enumerated defaults that do not require a default notice and/or an opportunity to cure the default.

Pursuant to Section 2.01(I) of the Mortgage entitled "Interest rate After Event of Default"

> "Notwithstanding the foregoing, except for an Event of Default under Section 2.01(a), (b), (c), (d), (j), or (k) above, Mortgagee will provide Mortgagor with Notice of an Event of Default hereunder… ."

(*See* **Exh B,** § 2.01(I)).

30. Section 2.01(b) of the Mortgage further provides that it is an event of default "if any warranty, representation, or certification made by Mortgagor or Guarantor herein or in connection with the Loan shall be materially false at the time it was made". (*See* **Ex. B,** § 2.01(b)). Thus, the Misrepresentation Default does not require any notice of default.

31. As for the Judgment Default, while a notice of default is required relating to judgments pursuant to Section 2.01(n) of the Mortgage, a notice is not required under 2.01(k) relating to encumbrances:

> "if Mortgagor shall encumber or agree to encumber, all or any portion of the Mortgage Property, or any interest there (including any air or development rights) without, in any such case, the prior written consent of Mortgagee.

(*See* **Ex. B,** § 2.01(n)).

8

32. Here, the Judgments clearly constitute encumbrances on the Property. Since the existence of encumbrances permit the accrual of default interest without notice, the Judgment Default does not require that the Secured Creditor transmit notice of default prior to its ability to accrue at the default rate.

33. Finally, to the extent that the Debtor conveyed an interest in the Debtor to Mr. Scwhartz, the Debtor also defaulted under the terms of the Mortgage pursuant to Section 2.01(j), which section expressly prohibits the Debtor from transferring or agreeing to transfer, in any matter, all or any portion of the Property, or any interest therein, or any interest in the Mortgagor. Notwithstanding the fact that the Debtor (at Section 26 of the Objection) would gloss over the fact that it willfully, and impermissibly, transferred an interest in the Debtor to Mr. Schwartz after the Loan was made, such conduct was expressly prohibited by the Mortgage. Furthermore, the Mortgage at Section 2.01(I) expressly carves out from any requirement to notice, before the accrual of default interest, actions of the Debtor which involve either transfer an interest in the Debtor or a transfer of an interest in the Property. Since the documentation supplied by the Debtor confirms that the Debtor transferred an interest in the Debtor without permission, the Secured Creditor was under no obligation to transmit a predicate notice the Debtor of its default under Section 2.01(j), prior to its ability to accrue at the default rate in connection with the Due on Sale Default.

## IV. Debtor's Claims of Waiver and/or estoppel are Without Merit.

34. The Debtor erroneously contends that the Secured Creditor is equitably estopped from maintaining this action. In New York, to establish an estoppel, "a party must prove that it relied upon another's actions, its reliance was justifiable, and that, in consequence of such reliance, it prejudicially changed its position. However, the conduct relied upon to establish estoppel must not otherwise be compatible with the agreement as written." *Flushing Unique Homes, L.L.C. v.*

*Brook. Fed. Sav. Bank*, 100 A.D.3d 956, 958 (2d Dep't 2012). Here, Debtor fails to allege with any specificity to have relied on the Secured Creditor's conduct or to have prejudicially changed its position as a result of the Secured Creditor's conduct. As such, the Debtor's estoppel claims are without merit.

35. To invoke equitable estoppel in the Second Circuit, the Debtor must show that: (1) there was a definite misrepresentation of fact and had reason to believe that it would rely on that statement; and (2) the debtor reasonably relied on that misrepresentation to his detriment." *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995). Again, Debtor does not meet that standard for estoppel.

36. The Debtor's allegations that the Secured Creditor's claims are waived are also without merit. In New York, waiver is "the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it." *New York v. State*, 40 N.Y.2d 659, 669 (1976), quoting *Werking v. Amity Estates, Inc.*, 2 N.Y.2d 43, 52 (1956) citing Whitney, Contracts ¶ 273, (4th ed. 1946). Further, waiver will not be inferred from "mere silence or inaction." *Cervera v. Bressler*, 85 A.D.3d 839, 842 (2d Dep't 2011). Here, the Debtor fails to show the Secured Creditor acted in any way to waive its claims under the Loan Documents and inaction is not grounds for finding waiver.

37. In addition, non-waiver clauses are "uniformly enforce[d]" by New York courts. *Awards.com v. Kinko's, Inc.*, 42 A.D.3d 178, 188 (1st Dep't 2007). Here, the Loan Documents provide express non-waiver provisions. Pursuant to Section 2.07 of the Mortgage, "no delay or omission of Mortgagee to exercise any right or power accruing upon any Event of Default shall impair any such right or power, or shall be construed to be a waiver of any such Event of

10

Default…" (*See* **Ex. B,** §2.07), Thus, pursuant to the non-waiver language in the Mortgage executed by the Debtor, the Secured Creditor cannot have waived any claims.

**V.    The Default Interest Rate of 24% is not a penalty.**

38.    Debtor impermissibly attempts to ask this court to rewrite the terms of the loan documents.  Under New York law, [i]t is well settled that an agreement to pay interest at a higher rate in the event of default or maturity is an agreement to pay interest and not a penalty.'" *In re South Side House, LLC*, 451 B.R. 248, 264 (Bankr. E.D.N.Y. 2011), *quoting Jamaica Sav. Bank v. Ascot Owners, Inc.,* 245 A.D.2d 20, 20 (N.Y. App. Div. 1st Dep't 1997); *In re Chatequgay*, 150 B.R. 529, 542 (Bankr. S.D.N.Y. 1993) ("contractual provisions providing for an increased interest rate on default are enforceable under New York law.").

39.    The Second Circuit has ruled that default interest provisions are enforceable and reflect the allocation of risk as part of the bargain struck between the parties, a bargain that benefits the obligor as well as the obligee:

> A variable interest ... can be beneficial to a debtor in that it may enable him to obtain money at a lower rate of interest than he could otherwise obtain it, for if a creditor had to anticipate a possible loss in the value of the loan due to his debtor's bankruptcy or reorganization, he would need to exact a higher uniform interest rate for the full life of the loan. *The debtor has the benefit of the lower rate until the crucial event occurs; he need not pay a higher rate throughout the life of the loan.* (emphasis added).

*Ruskin v. Giffiths*, 269 F.2d 827, 832 (2d Cir. 1959), *cert. denied*, 361 U.S. 947, 8 S.Ct. 402, 403, 4 L.Ed.2d 381 (1960); *accord Citibank, N.A. v. Nyland (CF8) Ltd.,* 878 F.2d 620, 625 (2d Cir. 1989) ("[T]he Court observed [in *Ruskin*] that debtors might fare worse in the future if creditors were not allowed to impose variable rates, because creditors would then impose higher rates for the full life of the loan in order to reallocate the risk."). Thus, as the Second Circuit has explained, "[p]repetition interest is generally allowable [as a claim] to the extent and at the rate permitted

11

under the applicable non-bankruptcy law, including the law of contracts." *Key Bank Nat'l Ass'n v. Milham (In re Milham),* 141 F.3d 420, 423 (2d Cir. 1998), cert. denied, 525 U.S. 872 (1998).

40. Indeed, even where the default rate strikes a judge as high, a court cannot rewrite the parties' bargain based on its own notions of fairness and equity. *Cruden v. Bank of New York,* 957 F.2d 961, 976 (2d Cir.1992) ("A court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous ... nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case.") (citation omitted); *In re Johns-Manville Corp.*, 845 F. Supp. 2d 584, 596 (S.D.N.Y. 2012) ("New York law is clear that subjective notions of fairness or equity are not a permissible basis for a court to rewrite a contract or to excuse compliance with conditions precedent."); *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 750 N.Y.S.2d 565, 780 N.E.2d 166, 171 (2002) ("[I]f the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity."); *785 Partners LLC*, *supra*, 470 B.R. at 132 ("The Debtor's appeal to equitable considerations has no place under New York law.").

41. Moreover, "[W]hen two sophisticated parties enter into a contract calling for an established rate on default, this Court will not disturb the agreement absent persuasive evidence of overreaching." *In re Woodmere Invs. Ltd. P'ship*, 178 B.R. 346, 355 (Bankr. S.D.N.Y. 1995). The requirement that the agreement must be enforced in accordance with its terms "has even greater force in the context of real property transactions, where commercial certainty is a paramount concern and where, as here, the instrument was negotiated between sophisticated, counseled parties, negotiating at arm's length." *Wallace v. 600 Partners Co.*, 86 N.Y.2d 543, 634 N.Y.S.2d 669, 658 N.E.2d 715, 717 (1995) (internal quotation marks and citations omitted); *accord Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 807 N.E.2d 876, 879 (2004).

42. Further, the Debtor's claims that these Defaults did not impact payment on the Loan are irrelevant. (*See*, Motion ¶ 33). It cannot be disputed that ownership of the Debtor is material because the Loan Documents pursuant to Section 2.01(b) of the Mortgage provide that such a misrepresentation constitutes a default. Moreover, the ownership of the Debtor is important to evaluating the potential credit-worthiness of the Debtor, as a potential borrower. The Loan was provided based on Lowy being the sole of the Debtor.

43. Here, there is no basis in law to disturb the parties' bargain. The Debtor and the Secured Creditor are sophisticated parties that entered into a commercial real estate loan transaction. The Secured Creditor and the Debtor agreed to allocate the risk of default by, among other things, including an unambiguous non-default rate of interest of 24% as permitted under New York law. In addition, the Debtor benefited from the loan by receiving the proceeds based on these terms set forth in the Loan Documents.

## **RESERVATION OF RIGHTS**

44. Secured Creditor expressly reserves its right to amend or supplement this Objection, to introduce evidence supporting this Objection at the hearing on the Objection, and to file additional and supplemental objections as Secured Creditor deems advisable.

**WHEREFORE,** the Secured Creditor respectfully requests that the Bankruptcy Court deny the Motion in its entirety and grant such other and further relief as is just and proper.

Dated: New York, New York
 October 29, 2019

                                               KRISS & FEUERSTEIN LLP

                                               By:     _*s/ Jerold C. Feuerstein*_
                                                              Jerold C. Feuerstein, Esq.
                                                               Stuart L. Kossar, Esq.
                                                                360 Lexington Avenue, 12th Floor
                                                                New York, New York 10017
                                                                (212) 661-2900

                                       *Attorneys for 1234 Pacific Street Lender LLC*