UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
In re:                                                                        Chapter 11

1234 Pacific Management LLC,                                 Case No.  1:19-40026-(NHL)

                                      Debtor.                        Hon. Nancy Hershey Lord
---------------------------------------------------------------

### DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. §1125
### RELATING TO PLAN OF REORGANIZATION

> **THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

1234 Pacific Management LLC (the "Debtor"), hereby submits this Disclosure Statement (the "Disclosure Statement"), pursuant to §1125 of Title 11, United States Code (the "Bankruptcy Code"), in connection with the Debtor's Plan of Reorganization dated June 3, 2020 (ECF #83) (the "Plan").  Defined terms in the Plan shall have the same meaning for purposes of this Disclosure Statement.

## I.     INTRODUCTION

A.  <u>Overview of the Plan</u>.

After extensive negotiations, the Debtor previously entered into a pivotal settlement (the "Settlement") with its senior mortgage lender, 1234 Pacific Street Lender LLC (the "First Mortgagee") and two judgment creditors, Gloria Malcolm ("Malcolm") and Orlaine Edwards ("Edwards").  The Settlement provides for discounted payoffs to the First Mortgagee and the judgment creditors predicated upon an anticipated refinancing of the Debtor's property in the

amount of approximately $5.5 million (the "Refinancing"). The Settlement was formally approved by the Bankruptcy Court on May 1, 2020 [ECF #82-1] and is the foundation for the Plan. The Settlement is expressly incorporated as <u>Exhibit</u> "A" to the Plan.

In its most basic terms, the Settlement provides the Debtor with an opportunity to refinance and retain its property at 1232-1234 Pacific Street, Brooklyn, New York 11216 (the "Property"), provided certain benchmarks are met, most notably, that the Refinancing must be completed by August 31, 2020 (hereinafter, "Scenario No. 1"). If the Debtor is unable to complete the anticipated Refinancing by that date, then Section 6 of the Settlement becomes operative whereby the First Mortgagee then becomes the alternate plan funder with the same obligations to provide funding as necessary to pay all Plan distributions to creditors hereunder. In consideration thereof, the First Mortgagee (or its nominee) then obtains fee simple ownership of the Property free and clear of all liens claims and encumbrances, subject only to its own existing mortgage debt (hereinafter, "Scenario No. 2").

Since the goal is for the Debtor to retain the Property, first, the Debtor is currently pursuing a Refinancing. Indeed, the Debtor remains confident it can timely close on the Refinancing, notwithstanding the intervening Covid-19 crisis. Under both funding scenarios general creditors shall receive a *pro rata* distribution from a pool of $25,000, while all administrative and real estate tax claims are also paid in full, except that in the event the Debtor is unsuccessful in obtaining the Refinancing and the Plan toggles to the First Mortgagee where the Debtor's counsel has agreed to cap its request for compensation at $50,000 plus expenses. In all other respects, however, the First Mortgagee's funding obligations mirror those of the Debtor.

## II.    THE CONFIRMATION PROCESS

    A. <u>Preliminary Approval of this Disclosure Statement</u>.

Due to the requirements that the Debtor complete its Refinancing by August 31, 2020, the Debtor has moved pursuant to 11 U.S.C. §105(d)(2)(B), to obtain preliminary approval of this Disclosure Statement. The Court will conduct a combined hearing providing final approval of the Disclosure Statement as containing adequate information within the meaning of 11 U.S.C. §1125 necessary for creditors to (i) evaluate the Plan; and (ii) determine whether to accept or reject the Plan. Final approval of the Disclosure Statement will be sought by the Debtor in conjunction with actual confirmation of the Plan. Creditors have the right to object to final approval of the Disclosure Statement, and to object to the Plan itself if they so elect. However, the Debtor has made every effort to promulgate a Plan that will be unanimously accepted by all classes of creditors. The Debtor already obtained the consents of the First Mortgagee and the two judgment creditors. Since the Property lacks equity without the Settlement, the Debtor is hopeful of [obtaining] consents as well from Class 5 unsecured creditors. Accordingly, the Debtor hopes that creditors will support these efforts without any objection. The Court has entered an Order establishing July \_\_, 2020 as the deadline for the return of Ballots accepting or rejecting the Plan by all impaired (the õVoting Deadlineö).

**APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN. THE DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL REVIEW OF THE PLAN. THE DISCLOSURE STATEMENT IS INTENDED TO AID AND SUPPLEMENT THAT REVIEW.**

B. Approval of Disclosure Statement and Confirmation of the Plan.

The Bankruptcy Court has scheduled a combined hearing pursuant to Sections 105 and 1128 of the Bankruptcy Code to consider both final approval of this Disclosure Statement and confirmation of the Plan on the same day and time, to wit, July 28, 2020 at 11:00 a.m., prevailing Eastern Time. The hearing will likely be conducted by the Honorable Nancy Hershey Lord, Bankruptcy Judge remotely through audio conference due to the COVID-19 Pandemic. Parties may access the Court's website to obtain information on how to participate in the hearing. At the hearing, the Bankruptcy Court will determine whether the requirements of §1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. The Debtor believes that the Plan will satisfy all applicable requirements of §1129(a) of the Bankruptcy Code, and can be confirmed under the cramdown provisions of 11 U.S.C. §1129(b) if necessary.

Any creditor or party in interest may object to confirmation of the Plan. The Bankruptcy Court has directed that objections, if any, shall be served by email upon counsel to the Debtor, Goldberg Weprin Finkel Goldstein LLP, Attn: Kevin J. Nash (knash@gwfglaw.com), 1501 Broadway, 22nd Floor, New York, New York 10036, counsel for the First Mortgagee, Jerold C. Feuerstein, Kriss & Feuerstein LLP, 360 Lexington Avenue, Suite 1200, New York, NY 10017 (jfeuerstein@kandfllp.com), co-counsel for Gloria Malcolm, Robert L. Johnson, Pryor & Mandelup LLP, 675 Old Country Road, 11590 (rlp@pryormandelup.com), and Bernard D. D'Orazio, Bernard D'Orazio and Associates, 238 West 139th Street, New York, NY 10030, (borazio@doraziolaw.com), counsel for Orlaine Edwards, Robert E. Johnson, Johnson Liebman, 305 Broadway, Suite 801, New York, NY 10007 (robert.johnson@johnsonliebman.com) on or

before July ___, 2020. The hearing may be adjourned from time to time without further notice other than by announcement in open court.

In order for the Plan to be accepted on a consensual basis, each impaired class must accept the Plan. Acceptance is based upon affirmative votes from each impaired class of voting creditors holding at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims of those creditors in a particular impaired class who actually vote. In the event that the Plan is not accepted by all impaired classes of creditors, the Debtor reserves the right to seek confirmation of the Plan under the so-called cram down provisions of §1129(b) of the Bankruptcy Code.

In accordance with §1126(f) of the Bankruptcy Code, all classes of claims that are impaired may vote to accept or reject the Plan. A class of claims is impaired if the Plan modifies, alters or changes the claimant's legal, equitable or contractual rights against the Debtor. In this case, the Class 2 Claim of the First Mortgagee and the Class 3 Claim of Gloria Malcolm, the Class 4 Claim of Orlaine Edwards and the Class 5 Claims of General Unsecured Creditors are impaired and are eligible to vote on the Plan. Based upon the Settlement, Classes 2, 3 and 4 have already agreed to accept the Plan.

Ballots for acceptance or rejection of the Plan will accompany the Plan, and should be completed by all creditors in an impaired class. After carefully considering this Disclosure Statement and the Plan, please indicate your vote on the enclosed ballot and return a copy of same, prior to the voting deadline of July ___, 2020 by email to Kevin J. Nash, (knash@gwfglaw.com), Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, NY 10036.

In order to be counted, your ballot must be actually received on or before July ___, 2020 at 5:00 p.m. prevailing Eastern Time (the "Voting Deadline"). While email transmission of the ballots is preferred due to the COVID-19 Pandemic, regular mail is also acceptable, so long as the completed ballot is actually received before the Voting Deadline. **Overnight delivery, personal delivery and facsimile transmissions are NOT acceptable.**

There is no need to file your ballot with the Clerk of the Bankruptcy Court. If your ballot is damaged or lost, or if you do not receive a ballot, you may request a replacement by contacting Goldberg Weprin Finkel Goldstein LLP, Attn: Kevin J. Nash at knash@gwfglaw.com.

Only actual votes will be counted. A failure to return a ballot will not be counted either as a vote for or against the Plan.

C.  <u>Disclaimer</u>.  The Bankruptcy Court's preliminary approval of this Disclosure Statement does not constitute an endorsement of the Plan. No representations other than those explicitly set forth in this Disclosure Statement are authorized concerning the terms of the Plan or the Debtor's development Plans, the scope of assets or the extent of the Debtor's liabilities.

This Disclosure Statement contains summaries of certain provisions of the Plan, certain statutory provisions, certain events in the case and certain financial information. Although the Debtor believes that the Disclosure Statement is accurate, the terms of the Plan govern, and creditors are advised to review the Plan in its entirety.

### III. BACKGROUND & DISCLOSURES

On January 3, 2019 (the "Petition Date"), the Debtor filed a petition for relief pursuant to Chapter 11 of the Bankruptcy Code initiating this Chapter 11 Case. At all relevant times, the Debtor has remained in possession of its assets and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

A. <u>Company Background and Key Events in the Chapter 11 Case</u>.

The Debtor was formed as a special purpose entity to acquire a residential apartment building located in the Crown Heights section of Brooklyn at 1232-1234 Pacific Street, (Block 1206, Lot 28), containing 36, 1- and 2-bedroom apartments (the "Property"). At the time the Chapter 11 case was filed, the Property was encumbered by a First Mortgage held by Signature Bank which was scheduled to mature on June 10, 2019.

Shortly after the filing of the Chapter 11 case, Signature Bank sold and assigned the mortgage to the First Mortgagee. Immediately before the maturity of the Mortgage, the Debtor requested a payoff from the First Mortgagee. Upon receipt of that payoff statement, the Debtor learned that the Mortgagee was seeking default interest due to what it believed to be certain misrepresentations made by the Debtor at origination of the subject mortgage loan in addition to other defaults under the loan documents. The Debtor objected to the imposition of default interest and filed comprehensive objections. The parties agreed to mediate their differences along with the claims asserted by two judgment creditors, Gloria Malcolm and Orlaine Edwards. Ms. Malcolm has a judgment claim of $852,118.41. Mr. Edwards has a judgment claim of $50,000. judgment

Pursuant to Order of the Bankruptcy Court (ECF#72), Bruce Weiner was appointed mediator and he was successful in brokering the Settlement which has since been approved and provides the basis for the Plan. This Stipulation of Settlement paves the way for the instant Plan of Reorganization. The Stipulation of Settlement is annexed as <u>Exhibit</u> "A" to the Plan.

B. <u>Best Interests Test and Liquidation Analysis</u>.

Section 1129(a)(7) of the Bankruptcy Code requires that each holder of an Impaired Claim or Equity Interest either (a) accept the Plan and Disclosure Statement or (b) receive or

retain under the Plan and Disclosure Statement property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

Here because the Property is overleveraged and has a fair market value of approximately $6 million pre-COVID-19, the value of any distributions to judgment liens, let alone unsecured creditors is virtually non-existent if the Debtor's case was converted to a case under Chapter 7 of the Bankruptcy Code. Although objections were filed, the First Mortgagee has indicated that its secured claim is almost $8,000,000 (including interest). Even if interest is limited, the mortgage matured almost a year ago, and thus even one year of default interest would exceed the value of the Property resulting in no distribution to any other creditors. Moreover, conversion of a case to a Chapter 7 case would mean the appointment of a Chapter 7 trustee, who would have to sell the Property during or shortly after the COVID-19 Pandemic without even the benefit of a transfer tax exemption. Under such a Scenario, the Debtor's estate would be fortunate to net half of the pre-COVID-19 value. Accordingly, the Debtor believes the "best interest" test of Bankruptcy Code Section 1129 is easily satisfied.

    C.    <u>Certain Risk Factors Considered</u>.

Holders of Claims and Equity Interests should read and consider carefully the risk factors below, as well as the other information set forth in the Plan and Disclosure Statement, before voting to accept or reject the Plan. These factors should not be regarded as constituting the only risks present in connection with the Plan and Disclosure Statement and its implementation.

1. <u>Risk Factors that May Affect the Debtor's Ability to Consummate the Plan and Disclosure Statement</u>.

    a.    <u>Debtor May Not Be Able to Secure Confirmation of the Plan</u>.

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 Plan. While, as set forth below, the Debtor believes the Plan complies with or will comply with all such requirements, there can be no guarantee that the Bankruptcy Court will agree.

    b.    <u>Parties May Object to the Classification of Claims and Equity Interests</u>.

Section 1122 of the Bankruptcy Code provides that a Plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtor believes the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code. Nevertheless, there can be no assurance the Bankruptcy Court will reach the same conclusion.

    c.    <u>Financing</u>.

The Debtor's ability to go forward is based upon refinancing the Property for an amount sufficient to pay all parties under the settlement. It is possible that in this COVID-19 environment, that a prospective lender will withdraw its support of the Debtor. If the refinancing proceeds are insufficient to pay all amounts required under the settlement it is expected that the Debtor will raise additional funds or its principals will loan additional monies needed to confirm the Plan.

## IV. THE PLAN

### UNCLASSIFIED CLAIMS

The Plan includes both classified and unclassified groups of claims.

Unclassified Claims primarily, if not exclusively, consists of the general administrative expenses incurred and being paid in the ordinary course of business, professional fees owed to the Debtor's counsel, Goldberg Weprin Finkel Goldstein LLP and the US Trustee based upon disbursements in the Chapter 11 case up to the Effective Date. Goldberg Weprin Finkel Goldstein LLP shall file a final application for allowance no later than thirty (30) days after the Effective Date.

The Allowed Priority Tax Claims of the IRS and New York State are also unclassified under the Plan, since these claims will also be paid in full. At the present time, the IRS and New York State have not filed priority claims with the Court. The Debtor does not believe that it owes taxes to New York State other than a nominal amount due for entity filing fees.

### V. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

Summary

The categories listed below classify Claims against the Debtor for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

A. Summary of Classification and Treatment of Claims and Interests.

| **Class** | **Claim** | **Status** | **Voting Rights** |
|---|---|---|---|
| 1 | Real Estate Tax Claims of the City of New York | Unimpaired | Not entitled to vote. |
| 2 | Mortgage Claim of the First Mortgagee | Impaired | Entitled to Vote |

10

| 3 | Gloria Malcolm | Impaired | Entitled to Vote |
|---|---|---|---|
| 4 | Orlaine Edwards | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Equity Interests | Unimpaired | Not Entitled to Vote (Insider) |

B.  <u>Treatment of Impaired Claims and Interests</u>.

1.  *Class 1 – Real Estate Tax Claims*.  Class 1 consists of all outstanding and accrued real estate taxes owed to the City of New York.

*Treatment*: Class 1 Real Estate Tax Claims shall be paid in full as follows: (i) at least one-half of the Allowed Class 1 real estate taxes shall be paid in Cash on or before the later of September 1, 2020 or the Effective Date; (ii) the balance of the real estate taxes shall be paid over a period of up to one (1) year starting October 1, 2020 and continuing monthly thereafter until all Class 1 Real Estate Tax Claims are paid in full, with all applicable statutory interest, as permitted under 11 U.S.C. §1129(a)(9)(C).  Approximately $118,000 is owed for real estate taxes and interest.  At closing of the Refinancing, tax escrow paid to the First Mortgagee for real estate taxes during the Chapter 11 case shall be reconciled and paid to New York City.

*Voting*: Class 1 Real Estate Tax Claims are not impaired and therefore not entitled to vote.

2.  *Class 2 - Claim of the First Mortgagee*.  Class 2 consists of the Mortgage Claim of the First Mortgagee in the amount of at least $7,726,206.00 (as of September 30, 2019) which has since been compromised by the Settlement.

*Scenario No. 1 Treatment*:  On or before August 31, 2020, the First Mortgagee shall receive an amount equal to the agreed discounted payoff pursuant to the Settlement in the sum of

11

$4,891,666.67 from the proceeds of the Refinancing. This payment shall be made in full satisfaction of all claims held by the First Mortgagee against the Debtor, whereupon the First Mortgagee shall deliver either an assignment of the underlying Mortgage, or a release and satisfaction thereof, without additional cost or expense to the Debtor.

*Scenario No. 2 Treatment*: In the event that the Refinancing does not occur on or before August 31, 2020, the provisions of Section 6 of the Settlement are triggered and become effective, whereupon the First Mortgagee shall then fund all distributions required under the Plan as provided in the Settlement, in exchange for receiving title to the Property pursuant to Section 5.3 of the Plan and the terms of the Settlement. In addition, in the event that the First Mortgagee (or its nominee) takes title to the Property, the First Mortgagee (or its nominee) shall be deemed a good faith purchaser for value pursuant to 11 U.S.C. § 363(m).

*Voting*: The Class 2 creditor is impaired and is deemed an accepting Class pursuant to the Settlement.

3. *Class 3 – Secured Claim of Gloria Malcolm*. Class 3 consists of the claim of Gloria Malcolm, who held a judgment lien in the amount of $852,118.41.

*Treatment*: Malcolm shall receive payment in the sum of $441,666.67 (plus any accrued interest at 4.5% per annum from May 31, 2020) from either the Refinancing under Scenario No. 1 or from the First Mortgagee under Scenario No. 2 in full settlement, release, and discharge of her claim and lien which has been reduced to a judgment against the Debtor. Simultaneously with the receipt of the payment, the Class 3 Creditor shall deliver a fully executed satisfaction of judgment and release to either the Debtor under Scenario No. 1 or the First Mortgagee under Scenario No. 2 of the Settlement.

*Voting*:    Malcolm is impaired and is deemed an accepting Class pursuant to the Settlement.

4.    *Class 4 – Secured Claim of Orlaine Edwards*.  Class 4 consists of the claim of Orlaine Edwards in the sum of $50,000.

*Treatment*:  Edwards shall receive payment in the sum of $29,272.00 (plus any accrued interest at 4.5% per annum from May 31, 2020) from either the Refinancing under Scenario No. 1 or from the First Mortgagee under Scenario No. 2 in full settlement, release, and discharge of the judgment against the Debtor.  Simultaneously with the receipt of the payment, the Class 4 Creditor shall deliver a fully executed satisfaction of judgment.

*Voting*:    Edwards is impaired and is deemed an accepting Class pursuant to the Settlement.

5.    *Class 5 – General Unsecured Claims*.  Class 5 consists of General Unsecured Claims in the total amount of $88,613.80, including ECB violations.

*Treatment*:  Each holder of an Allowed General Unsecured Claim shall receive its Pro Rata Share of the $25,000 General Creditor Fund, calculated and computed by dividing the total amount of the Class 5 Allowed General Unsecured Claims by the amount of the General Creditor Fund.  The pro rata distribution to Class 5 claims shall total approximately 28% based upon allowed General Unsecured Claims of $88,613.80.  The IRS has filed a General Unsecured Claim of $1,902.04 for interest and penalties based upon the 2007 partnership return.  If the claim is valid, then distribution to the Class 5 creditors shall be reduced by approximately one percent.

*Voting*:  The Class 5 creditors are impaired and entitled to vote on the Plan.

6. *Class 6 – Equity Interests*. Class 6 consists of all equity interests in Debtor.

*Treatment*: Under Scenario No. 1, the Equity Interests in the Debtor shall be unaffected by this Plan, and shall continue post-Confirmation unabated. Under Scenario No. 2, Equity Interests in the Debtor shall be terminated after equity winds down the Debtor.

*Voting*: Class 6 is not Impaired, since the legal rights of the Equity Holders are not being changed. However, the Class 6 Holders are not entitled to vote as they are insiders of the Debtor.

### C. Nonconsensual Confirmation

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for the purposes of confirmation by acceptance of the Plan by an impaired class of claims. The Debtor shall seek confirmation pursuant to Section 1129(b) of the Bankruptcy Code with respect to any rejecting class of claims.

## ARTICLE VI

## IMPLEMENTATION OF THE PLAN

Implementation. From the Debtor's perspective, the Plan shall be implemented and funded through the Refinancing. To the extent that additional monies beyond the Refinancing are required to complete the distributions and payments under Plan, such additional monies will be funded by the Debtor or its principals.

All told, the Debtor projects that a total pool of approximately $5,425,000 will be required to consummate the Settlement, and pay the balance of the claims, including Real Estate taxes, Administrative Expenses (but excluding fees to the Debtor's attorneys), and the pro rata distribution to General Unsecured Creditors. Some of the Real Estate taxes may be deferred post-confirmation for a short period of time as described above. The Settlement also

contemplates an adjustment between the Debtor and the First Mortgagee for real estate taxes accruing post-petition based upon the fact that the Debtor has made a portion of its monthly tax reserve payments to the First Mortgagee, and the First Mortgagee has not yet remitted all of the tax payments to the City of New York.

<u>Refinancing</u>. The Debtor intends to seek formal Bankruptcy Court approval of the Refinancing as part of the Confirmation process. That it is to say, that at least five (5) days prior to the Confirmation Hearing the Debtor shall file a supplement to the Plan outlining the specific terms of the Refinancing, listing, inter alia, the loan amount, interest rates, and timing for closing. Based upon the Settlement, the Debtor will seek any necessary approval of the Refinancing under 11 U.S.C. §364 as part of the Confirmation Order. Thus, in effect, Confirmation of the Plan shall also constitute approval of the Refinancing.

At the present time, the Debtor's principal has received a preliminary commitment from Lancewood Capital LLC for $5,500,000. Prior to confirmation the Debtor will obtain an updated commitment, which may be issued to the Debtor and other affiliates as a guarantor. Currently, the Debtor is seeking short term financing of one year with options for another year based upon an interest rate floor of 6.9%. To the extent that additional funds are needed to fund the Plan, those funds will be provided by the Debtor's principals.

<u>Toggle to First Mortgagee</u>. Pursuant to the terms of the Settlement, if the Debtor does not complete the Refinancing by August 31, 2020, then Scenario No. 2 is operative and the First Mortgagee becomes the funder of all distributions set forth herein. Upon completion of such funding, title to the Property shall be transferred and conveyed to the First Mortgagee or its nominee no later than five (5) business days thereafter. The sale and transfer of the Property shall be memorialized by a Bargain and Sale Deed without covenants, a Bill of Sale, transfer

documents and other standard and customary closing documents utilized for a sale of real property in New York City.

Transfer Tax Exemption. To the fullest extent permitted by Section 1146(a) of the Bankruptcy Code, the Refinancing and/or the transfer of the Property to the First Mortgagee shall be exempt from the payment of transfer, stamp, deed, mortgage recording or similar taxes, since all of the transactions are being done, and constitute a "transfer under and in furtherance of a confirmed plan of reorganization" in bankruptcy. Thus, (i) the issuance and making of the Refinancing; or (ii) the potential transfer of the Property to the First Mortgagee or its designee under the Plan shall be exempt from any transfer, stamp, deed, mortgage recording tax or similar tax, and the appropriate state or local governmental officials shall forego the collection of any such transfer taxes and shall accept all deeds and mortgage instruments for filing and recordation without the payment of any such transfer taxes.

Delivery of Distributions. The distributions to the holders of Allowed General Unsecured Claims shall be made no later than September 10, 2020 by the Disbursing Agent from either the Refinancing proceeds under Scenario No. 1, or funding provided by the First Mortgagee if Scenario No. 2 becomes operative. Distribution checks shall be forwarded: (i) at the address set forth on any allowed Proof of Claim filed, or (ii) at the addresses reflected in the Debtor's Bankruptcy Schedules. If a distribution to any Creditor is returned as undeliverable without a forwarding address, no further distributions to such Creditor shall be made. All claims for undeliverable distributions shall be made on or before the 180th day after the first distributions under the Plan. All unclaimed dividends by a Creditor shall revert to the Debtor under Scenario No. 1 or the First Mortgagee under Scenario No. 2.

Procedures for Treating and Resolving Disputed Claims. No payments or distributions shall be made with respect to any portion of a Disputed Claim unless and until objections to any Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim in whole or in part. In the interim, the Disbursing Agent shall establish an appropriate reserve (the "Disputed Claim Reserve") for all Disputed Claims pending resolution thereof. Payments from the Disputed Claim Reserve shall be paid when and if the Disputed Claim becomes an Allowed Claim in whole or in part. Following completion of the claim objection process, any unused portion of the Disputed Claim Reserve shall revert to the Debtor under Scenario No. 1 or the First Mortgagee under Scenario No. 2.

Post-Confirmation Stays/Injunctions. All stays pursuant to Section 362 of the Bankruptcy Code shall remain in full force and effect until the close of the bankruptcy cases and entry of a Final Decree. All Creditors who hold, have held, or may hold a Claim or Claims against the Debtor are permanently enjoined on and after the Confirmation Date from (i) commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or Order against the Property; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Property; and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Property.

# ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Prior Disposition of Executory Contracts and Unexpired Leases. Under Scenario No. 1, all executory contracts and unexpired leases not previously assumed or rejected by Order of the Court or this Plan shall be deemed assumed as of the Effective Date, including the residential apartment leases. Under Scenario No. 2, all executory contracts and unexpired leases not previously assumed or rejected by Order of the Court or this Plan shall be deemed terminated as of the Effective Date, except the residential apartment leases. Any defaults with respect to the residential apartment leases shall be addressed in the regular course of business without any further proceedings in the Bankruptcy Court.

# ARTICLE VIII

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain continuing jurisdiction for the following purposes:

> To allow, disallow, determine, liquidate, classify, estimate, or establish the treatment of any Claim;
>
> To decide and determine all matters related to the granting and denying, in whole or in part, of any Professional Compensation;
>
> To decide any dispute relating to the Settlement or the Plan;
>
> To adjudicate any motions, adversary proceedings, applications or contested matters that may be pending on the Effective Date;
>
> To enter and implement such Orders as may be necessary or appropriate to execute, implement, enforce or consummate the provisions of the Plan, the Refinancing, and the distributions hereunder;
>
> To adjudicate any and all disputes arising from or relating to the Plan or any transactions contemplated herein;

        To consider any modifications of the Plan to cure any defect or omission, or to reconcile any inconsistency with the Confirmation Order; and

        To enter the Final Decree concluding and closing this bankruptcy case.

## ARTICLE IX

## MISCELLANEOUS

Confirmation Order Controls. In the event any provision of the Plan is inconsistent with the specific provisions of the Confirmation Order, the Confirmation Order shall control and take precedence over the general provisions of the Plan.

Conditions to the Effectiveness of the Plan. Confirmation and the occurrence of the Effective Date shall be conditioned upon (i) entry of the Confirmation Order and (ii) either (a) final approval of the Refinancing either separately or in conjunction with Confirmation of the Plan and the closing on the Refinancing under Scenario No. 1; or (b) the implementation of the toggle pursuant to Section 5.3 of the Plan and the First Mortgagee's funding of the Plan should Scenario No. 2 become operative.

## ARTICLE X

## CONCLUSION

The Debtor believes the Plan should be confirmed and urges creditors to vote in favor of the Plan.

Dated: New York, NY
       June 3, 2020

| | |
|---|---|
| 1234 Pacific Management LLC | Goldberg Weprin Finkel Goldstein LLP |
| | Attorneys for the Debtor |
| | 1501 Broadway, 22nd Floor |
| | New York, NY 10036 |
| By:   /s/ Mendy Lowy | By: /s/ Kevin J. Nash, Esq. |